**T. ROWE PRICE SMALL–CAP FUND, INC., Plaintiff,**

v.

**OPPENHEIMER & CO., INC., Defendant.**

No. 95 Civ.1925(JSR)(THK).

United States District Court, S.D. New York.

May 21, 1997.

Daniel A. Pollack, Edward T. McDermott, Pollack & Kaminsky, New York City, for Plaintiff.

Glenn E. Butash, Schulte Roth & Zabel LLP, New York City, for Defendant.

## MEMORANDUM OPINION AND ORDER

KATZ, United States Magistrate Judge.

In this action, plaintiff T. Rowe Price Small–Cap Value Fund, Inc. ("T. Rowe Price"), seeks damages and rescission under the Securities Act of 1933 and state law, based upon allegedly misleading statements in, or omissions from, a Registration Statement filed with the Securities and Exchange

Commission on October 6, 1993, and a related Prospectus, dated December 14, 1993. The Registration Statement concerned a public offering of rights by Guardian Bancorp, the bank holding company for Guardian Bank ("the Bank" or "Guardian"), a Los Angeles-based bank that was seized by the California Department of Banking in 1995. Plaintiff, as a "standby purchaser" in the offering, purchased approximately $1 million worth of Guardian securities. Defendant Oppenheimer & Co., Inc. ("Oppenheimer"), acted as the dealer-manager with respect to the offering.

Discovery in this action was completed in July 1996 and the Joint Pretrial Order is to be submitted by July 7, 1997. The instant dispute involves Oppenheimer's responses to plaintiff's Requests for Admission, which were served on Oppenheimer in June 1996, as well as Oppenheimer's responses to certain interrogatories. The parties have submitted letter-briefs to the Court regarding these disputes and oral argument was heard on April 2, 1997.

*THE REQUESTS FOR ADMISSION*

Plaintiff's Requests for Admission, submitted pursuant to Rule 36 of the Federal Rules of Civil Procedure, required approximately 124 separate responses. On June 17, 1996, defendant responded to each request, in some cases noting an objection on grounds such as relevance and then providing a response in the nature of an admission, a denial, or an inability to admit or deny. Defendant amended and supplemented its responses on September 9, 1996. Although defendant's objections based on relevance were initially addressed in the parties' submissions, that dispute is moot for two reasons: (1) despite its relevance objection, defendant did provide a substantive response to each request; and (2) defendant's objection based on relevance arose out of its concern that its failure to object might be taken as a waiver on a substantive dispute in the litigation—whether events post-dating the offering documents at issue are of any relevance to the question of either liability or damages. At oral argument defense counsel appeared to concede, and, in any event, the Court ruled, that for purposes of discovery, the information as to which admissions were sought was relevant, and that this in no way constituted an admission or ruling on the substantive issue to be resolved by the district judge before whom the case is to be tried.

Although the responses in contention are now substantially more limited than when this dispute arose, they remain too numerous to address individually. However, the objections fall into certain broad categories which are discussed below.

A substantial number of the requests seek admissions relating to activities at Guardian Bank that bear on the alleged misrepresentations in the offerings. Of particular relevance to plaintiff is the manner in which the Bank handled its problem assets. In that regard, many of the requests in issue seek admissions on the action or inaction of Guardian's Special Assets Department and various Bank officers. Other requests relate to Oppenheimer's due diligence activities with respect to the offering.

The Bank is not a party to this action, nor is the FDIC, which became the Bank's receiver and, as such, gained custody of the Bank's records. Those documents are alleged to be in Chicago and were not the subject of discovery by either party. However, plaintiff took the deposition of a number of former employees of the Bank, who testified to certain events as to which they claimed to have knowledge and about which admissions were sought.

Defendant's response to requests relating to activities at the Bank was, for the most part, that it made reasonable inquiry in order to ascertain the veracity of the requested admissions, but it was unable to admit or deny the requests because the information necessary to do so was not known or readily available—a response that is clearly contemplated under Rule 36. As one explanation for its inability to admit or deny various requests, Oppenheimer claims that it lacks firsthand knowledge of various matters at the Bank, including issues relating to specific Bank personnel and their responsibilities. It contends that Bank documents that might contain information that would enable it to admit or deny the requests are in the custo-

dy of the FDIC and, thus, the information is neither known nor "readily obtainable" under Rule 36. Oppenheimer relies upon case law holding that, in responding to Rule 36 requests to admit, a party must review its own records and make inquiry of its own agents, but need not investigate the issue through subpoenas and depositions of third parties, such as the FDIC in this case.

Oppenheimer takes the further position that the former Bank employees who were deposed bore hostility to the Bank, and that it is not required to adopt their version of events because Oppenheimer is not in a position to know what actually occurred at the Bank and the witnesses' credibility is a matter to be determined by the trier of fact in this action. Finally, Oppenheimer contends that to the extent that certain requests seek admissions as to what various deponents believed was occurring at the Bank, or what they thought about those occurrences, those beliefs can be known only by the deponent and cannot be admitted or denied by Oppenheimer. In sum, Oppenheimer represents that it made a good faith effort to respond to the requests for admissions but, with respect to activities at the Bank, it is not in the position to admit or deny many of the requests because it does not have information about those activities and it is not prepared to accept a particular witness' testimony or beliefs as established fact. Rather, it is prepared to admit what that testimony was and, although it may ultimately have contrary evidence at the time of trial, if it does not, it believes that it is left for the trier of fact to accept or reject the witness' testimony based upon the witness' credibility and the complete record in the case.

In response, plaintiff has not argued that Oppenheimer was required to subpoena the documents from the FDIC so that it could respond fully and accurately.[1] Indeed, such a position would be tenuous since the discovery period was to end shortly after the requests were served, and no substantial additional discovery could reasonably have been contemplated. Rather, plaintiff takes the position that since the FDIC documents are not part of the record in this case and never will be, they cannot be relied upon as a basis to fail to admit or deny, when there is uncontested deposition testimony in the record by certain former Bank employees that addresses the subject of the requests. Further, it is argued that no FDIC documents have been identified which would contradict that testimony. Finally, plaintiff questions Oppenheimer's assertion that the former Bank employees who were deposed are hostile to the Bank and, in the absence of contrary testimony or evidence, contends that defendant must admit the truthfulness of the employees' views of what occurred at the Bank. I cannot agree with plaintiff's position.[2]

## DISCUSSION

■ Rule 36 is not a discovery device. The purpose of the rule is to reduce the costs of litigation by eliminating the necessity of proving facts that are not in substantial dispute, to narrow the scope of disputed issues, and to facilitate the presentation of cases to the trier of fact. *See Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir.1983) (Rule 36 admissions may narrow issues and speed the resolution of claims); *Moosman v. Joseph P. Blitz, Inc.,* 358 F.2d 686, 688 (2d Cir.1966); *Yahaya v. Hua,* No. 87 Civ. 7309(CES), 1989 WL 214481, at *6 (S.D.N.Y. Nov.28, 1989); *State of Vermont v. Staco, Inc.,* 684 F.Supp. 822, 829 (D.Vt.1988); *Thalheim v. Eberheim,* 124 F.R.D. 34, 35 (D.Conn.1988).

---

**1.** As stated in one of plaintiff's submissions to the Court:

Finally, Oppenheimer's contention that plaintiff "suggest[ed]" that Oppenheimer was required to make an independent investigation before it could be excused from its duty to answer the requests simply is a "red herring". Plaintiff's January 17 letter contains no such argument, especially because Oppenheimer has the sworn testimony of knowledgeable Guardian officials which contain the relevant information.
Letter of Edward T. McDermott, Esq., dated February 7, 1997, at 8.

**2.** Although plaintiff contends that it is only seeking an order striking various objections and contentions of Oppenheimer, not that the Court deem matters admitted, the practical result of the request, if granted, would leave Oppenheimer with little choice but to admit the requests.

Because requests for admission are used to coerce admission of facts about which there is no real dispute, they can be particularly helpful in expediting and streamlining litigation. Likewise, requests for admission can save litigants valuable time and substantial money, which would otherwise have to be spent unnecessarily either to prove certain facts at trial, or to establish certain facts through complex costly discovery procedures, such as interrogatories, depositions, and requests for the production of documents, when such facts are not contested.

7 James Wm. Moore, et al., *Moore's Federal Practice* § 36.02, at 36–8 to 36–9 (Matthew Bender 3d ed.1997) (citations omitted). Where requests to admit are utilized at the completion of the pretrial discovery phase, as they were in this action, they can no longer serve the purpose of obviating the need for costly discovery and, thus, their sole purpose is to streamline the presentation of evidence at trial.

■■■ In responding to a properly stated request, a party must make "reasonable inquiry" of "information known or readily obtainable by him" that allows him to fairly admit or deny the request. Fed.R.Civ.P. 36(a) and Advisory Committee Notes to 1970 amendment. He may not give lack of information or knowledge as a reason for failure to admit or deny unless he has made such inquiry. *SEC v. Thrasher,* No. 92 Civ. 6987(JFK)(MHD), 1996 WL 460148, at *2 (S.D.N.Y. Aug.13, 1996); *Beberaggi v. New York City Transit Auth.,* No. 93 Civ. 1737(SWK)(MHD), 1994 WL 18556, at *5 (S.D.N.Y. Jan.19, 1994). What constitutes "reasonable inquiry" and what material is "readily obtainable" is a relative matter that depends upon the facts of each case. *See Dubin v. E.F. Hutton Group Inc.,* 125 F.R.D. 372, 374 (S.D.N.Y.1989); *Al–Jundi v. Rockefeller,* 91 F.R.D. 590, 593–94 (W.D.N.Y.1981); *Kendrick v. Sullivan,* No. Civ. A. 83–3175, 1992 WL 119125, at *3 (D.D.C. May 15, 1992). However, "[b]ecause rule 36 admission requests serve the highly desirable purpose of eliminating the need for proof of issues upon trial, there is a strong disincentive to finding an undue burden [in responding] where the responding party can make

the necessary inquiries without extraordinary expense or effort...." *Al–Jundi,* 91 F.R.D. at 594.

## I. Requests Relating to Bank Practices

■■■ As an initial matter, I find no violation of the Rule 36 requirement of "reasonable inquiry" resulting from Oppenheimer's failure to subpoena FDIC records. Although, under certain circumstances, parties may be required to inquire of third parties in order to properly respond to requests to admit, *see, e.g., In re Gulf Oil/Cities Serv. Tender Offer Litig.,* Nos. 82 Civ. 5253, 87 Civ. 8982(MBM), 1990 WL 657537, at *3–4 (S.D.N.Y. May 2, 1990) (court finds that plaintiff must consult non-parties' counsel to confirm data derived from figures in documents produced by non-party, where plaintiff and non-party have parallel interests and have been closely cooperating in conducting discovery in two related cases); *Al–Jundi,* 91 F.R.D. at 594–95 (where, without extraordinary expense or effort, defendant may be able to respond based upon information secured from co-defendants and their counsel, such efforts must be made), such a requirement is far from absolute. Rather, as set forth in Rule 36, the responding party need only make "reasonable" efforts to secure information that is "readily obtainable." *See, e.g., Al–Jundi,* 91 F.R.D. at 593–94. Generally, a "reasonable inquiry" is limited to review and inquiry of those persons and documents that are within the responding party's control.

> Reasonable inquiry includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants, enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response. In this connection, relevant documents and regulations must be reviewed as well.

*Herrera v. Scully,* 143 F.R.D. 545, 548 (S.D.N.Y.1992) (quoting *Diederich v. Department of Army,* 132 F.R.D. 614, 619 (S.D.N.Y. 1990)); *Diederich,* 132 F.R.D. at 620 ("The requirement of 'reasonable inquiry' does not

generally extend to third parties, absent sworn deposition testimony of such third party."). *See also Beberaggi*, 1994 WL 18556 at *5 (response of inability to admit or deny not well-taken where party fails to recite that it made reasonable inquiry and information is seemingly within its control); *Kendrick*, 1992 WL 119125, at *3 (court finds that review of documentary evidence in plaintiff's possession was sufficient to constitute reasonable inquiry, and, where information was in the hands of the adversary or adverse third parties, it was proper to conclude that they could not admit or deny the requests); *Morreale v. Willcox & Gobbs DN, Inc.*, No. 89 Civ. 5531(MJL)(NRB), 1991 WL 107441, at *1 (S.D.N.Y.1991) (no obligation to interview former employees of non-party). *But see Dulansky v. Iowa–Illinois Gas & Elec. Co.*, 92 F.Supp. 118, 123 (S.D.Iowa 1950) (holding that plaintiff was required to notice deposition of defendant's agent and other witnesses to event in issue in order to respond to requests for admission).

In my view, it would far exceed the "reasonable inquiry" provision of Rule 36, to require defendant to subpoena FDIC documents in Chicago, perhaps litigate the propriety of the subpoena, travel to Chicago to review large volumes of documents, and incur whatever additional expense might be involved in their production. Thus, to the extent that various requests called for admissions as to matters at the Bank of which Oppenheimer had no knowledge, and as to which there may have been relevant information in the FDIC documents, it was appropriate to respond that it had made reasonable inquiry and it was unable to admit or deny the requests.[3]

This conclusion is not undermined by the fact that certain former employees of the Bank testified at their depositions on matters relevant to the requests. Oppenheimer has

legitimately argued that it is simply not in the position to admit the facts to which the employee testified since it does not have knowledge of certain Bank matters. It is true, as plaintiff argues, that where a non-hostile third party has relevant information which is readily available, a responding party may have an obligation to seek out that information in formulating a response to requests to admit. Moreover, I agree with plaintiff's further argument that if the former Bank employees are non-hostile witnesses and they were deposed, defendant must consider their deposition testimony in responding to the requests. What I cannot accept is plaintiff's position that defendant must admit as true the statements of former Bank employees about Bank matters which are outside defendant's knowledge, and as to which there may be other evidence, either in the form of documents or testimony of other Bank employees. The absence of contradictory information in the record as it now stands simply means that Oppenheimer is unable to deny the truthfulness of what various deponents testified occurred in their areas of the Bank—and Oppenheimer has appropriately not denied the truthfulness of those statements.

Rule 36 responses become, in effect, sworn evidence that is binding upon the respondent at trial. Oppenheimer is not compelled to be bound by a version of events presented by third parties, particularly where it has asserted that it has reason to believe that those individuals may have interests hostile or adverse to the Bank and Oppenheimer, and there remains a possibility that other Bank employees with relevant information, who are not under Oppenheimer's control, may choose to testify at trial.[4] *See, e.g., Kendrick*, 1992 WL 119125, at *2–3 (court agrees with plaintiff that it need not admit facts testified to by hostile third par-

---

**3.** Neither party attempted to subpoena the documents in the FDIC's custody. The Court was informed subsequent to the oral argument of this motion that plaintiffs in an action in California—*Gould v. Harris*—which involves the same offering that is the subject of this action, did subpoena FDIC documents and apparently received two cartons of material. Defendant has represented that it will seek to review those documents and, if they contain information which compels an amendment of its earlier responses, it will provide one.

**4.** Defense counsel has suggested that two former executives of the Bank, who are defendants in a case in California arising out of the same events, may have an interest in testifying at the trial of this action.

ties, since plaintiff was entitled to have trial judge determine the weight and credibility of the testimony); *compare Gulf Oil,* 1990 WL 657537, at *4–5 (although party need not be bound by witness's version of events if there is reason to question it, particularly based upon the interest or hostility of the witness, this case is distinguishable because facts are not in genuine dispute and are available from non-party whose interests are identified with the responding party).

In the absence of an admission, the trial judge will be required to determine what weight to give the deponents' testimony, with respect to several discrete factual issues. There is very little burden on plaintiff in having to submit the relevant deposition testimony at trial and, if it is uncontroverted, the burden on the court in deciding whether to credit the testimony is insignificant. Thus, the goal of efficiency underlying Rule 36 is not frustrated in any meaningful way by defendant's responses. Indeed, far more time appears to have been spent litigating this dispute than will be required to put before the court the relevant deposition testimony.

## II. Oppenheimer's Due Diligence

■ There are a discrete set of requests that relate to testimony given by Bank employees about due diligence activities of Oppenheimer personnel during the relevant period of time. For example, Requests VIII–17 and VIII–18 seek admissions that Oppenheimer personnel did not interview two Bank employees with responsibility for Guardian Bank assets—Mr. Broyer and Ms. Gill. Each of those individuals testified at their deposition that they were not interviewed by Oppenheimer personnel. Oppenheimer responded that it was unable to admit or deny the requests. Plaintiff argues that the deposition testimony is uncontradicted and, indeed, is confirmed by the testimony of an Oppenheimer employee, Mr. Abrahams. It therefore contends that Oppenheimer's responses are inadequate. I must disagree.

Mr. Abrahams testified at his deposition that he could not remember whether or not he interviewed Mr. Broyer and he did not know whether any other Oppenheimer em-

ployee interviewed Broyer. There were several Oppenheimer employees who participated in the due diligence, some of whom left Oppenheimer long ago and were unavailable. Thus, it was proper for Oppenheimer to refuse to admit or deny the truthfulness of the request. Similarly, with respect to the interview of Ms. Gill, although she testified she was not interviewed, and Mr. Abrahams testified that he did not interview her, another Oppenheimer employee, Stanton Wong, testified that he recalled her name and simply could not remember whether or not he had discussions with her. Defendant contends that it is entirely possible that Mr. Wong's or other Oppenheimer employees' recollections will be refreshed at trial and that they may establish that Ms. Gill was interviewed. Under these circumstances, Oppenheimer is not required to concede that Ms. Gill's version of the facts is true.

Request VIII–19 similarly seeks an admission with respect to what Ms. Gill purportedly told Oppenheimer personnel and their failure to interview her. For the same reasons as stated above, Oppenheimer takes the position that it is unable to admit or deny the statement and I find its response adequate.

## III. Deponents' Views and Beliefs

■ There is a group of requests that seek admissions as to whether various Bank employees who were deposed regarding the propriety of the Bank's actions held the beliefs to which they testified. Defendant objected to these requests and also responded that it was unable to admit or deny them. Of the eleven responses in contention, six of them, requests III–9 through III–11, III–13, X–10 and X–11, were also based on the fact that the FDIC has the Bank's records—a basis for Oppenheimer's responses that I have already found to be appropriate. There are five remaining requests in issue in this category—III–4, VIII–13 through VIII–15 and VIII–20.

Request III–4 will serve as an example of the nature of these requests. Mr. Shields, a former employee of the Bank, testified at his deposition that in November and December 1993, he considered the staff of the Special Assets Department of the Bank to be inexpe-

rienced and overwhelmed. Plaintiff asks Oppenheimer to admit or deny that Shields actually held the beliefs to which he testified. Oppenheimer takes the position that the deposition testimony speaks for itself and it is unable to admit or deny the truthfulness of his beliefs.

Here, too, I must agree with Oppenheimer's position. Simply because a former Bank employee testifies at his deposition about what he believed at some time in the past, Oppenheimer need not admit to that person's state of mind, particularly when it views the witness as having interests adverse to it. Indeed, I do not believe that requests of this nature in any way serve the goals of Rule 36. There is no burden on plaintiff if required to place in evidence the few lines of deposition testimony that set forth the witnesses' beliefs. If Oppenheimer has no evidence to controvert that testimony, which appears to be the case, the Court will determine what weight, if any, to give that testimony. The effort put into arguing over the truthfulness of a witness' state of mind is far greater than simply placing his testimony in evidence.[5]

### IV. Misleading Requests

There are two requests that Oppenheimer objected to as "misleading." Plaintiff contends that a request cannot be misleading and that Oppenheimer was required to admit the part of the request that was true and qualify or deny the remainder. It thus seeks to strike the objection. Plaintiff's request is denied.

Requests III–24 and III–25 seek admissions which incorporate facts from the twenty-three prior requests to admit. For example, Request III–24 states: "Neither Oppenheimer nor anyone else told [T. Rowe] Price, prior to the closing of the Guardian offering, of the foregoing facts (1–23) regarding the Special Assets department." Oppenheimer observes that it either denied or was

unable to admit or deny the facts stated in the prior twenty-three requests to admit, and therefore an admission or denial of this request is impossible and would be inherently confusing. I agree. Further, I view these requests as failing to satisfy the basic requirement that requests to admit be simple and concise and state facts singly, so that they can easily and coherently be admitted or denied. *See Dubin,* 125 F.R.D. at 375–76; *Thalheim,* 124 F.R.D. at 35; *Herrera,* 143 F.R.D. at 549.

### V. Request to Strike Averment

Request VII–7 is the sole request in issue as to which plaintiff seeks to strike an averment offered by Oppenheimer in response. Plaintiff also seeks to have the request deemed admitted.

The request states: "In the period November 1993 through January 1994, the Special Assets Department [of the Bank] was not given responsibility for all of Guardian's problem loans of Guardian and OREO [other real estate owned]." In response, defendant objected to the relevancy of the request but further responded that it was unable to admit or deny the matters set forth in the request, because the records of the Bank are in the possession of the FDIC. In further response, Oppenheimer went on to aver that "the statements contained in the Registration Statement, in the Prospectus, and in all other documents issued in connection with the Rights Offering concerning the role and activities of the Special Assets Department of Guardian Bank were true and there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading." Plaintiff requests that this averment be stricken because it was neither responsive to the request nor was it an appropriate qualification of Oppenheimer's response. I must agree. The response goes far beyond the very specific factual contention in the request to admit, and makes a broad, categorical state-

---

5. Request VIII–20 overlaps two of the categories described above. It seeks an admission as to whether three Bank employees who were deposed would have responded truthfully to inquiries about Guardian had Oppenheimer made such inquiries. Any requirement that Oppen-

heimer admit or deny such a request would involve sheer speculation on its part. It was, therefore, totally appropriate for Oppenheimer to respond that the witness' testimony speaks for itself and that it was otherwise unable to respond to the truthfulness of the request.

ment that every assertion made with respect to the offering was accurate and true. On its face, this is neither responsive to the request nor a legitimate qualification of the response. Indeed, in view of Oppenheimer's position that it lacks sufficient knowledge about activities at the Bank to allow it to respond to many of the requests, it is difficult to imagine how it could legitimately assert that all statements in the offerings relating to Bank activities were unequivocally accurate. Defendant's averment will therefore be stricken.

Nevertheless, the Court will not exercise its discretion to deem the request admitted. Plaintiff contends that two Bank employees, Mr. Broyer and Mr. Shields, gave uncontradicted testimony that Mr. Johnson, who was not in the Special Assets Department of the Bank, played a role in handling certain problem assets of the Bank. In the absence of evidence to the contrary in the record, plaintiff contends that the statement must be deemed to be admitted. Oppenheimer responded to the request, as it did with respect to other requests, that it was unable to admit or deny its truthfulness because information related to Bank operations is in the custody of the FDIC, and the information known or readily available is insufficient to enable it to admit or deny the request. As with the responses discussed earlier, Oppenheimer is not required to admit to the truthfulness of statements which are based upon the testimony of witnesses it perceives as hostile, when it has no firsthand knowledge and relevant information may be contained in unavailable Bank documents. If the witnesses testify at trial, Oppenheimer may cross-examine them. If the witnesses are unavailable to testify at trial, plaintiff can put in evidence their relevant deposition testimony, which consists of no more than two transcript pages. In either case, the trier of fact can, without serious burden, determine what weight to give their testimony.

## INTERROGATORIES

Plaintiff seeks to strike Oppenheimer's objections to Interrogatories 5, 6, 7, 9, 10, 11, 12, and 13. The interrogatories seek the identities of individuals with relevant knowledge. Oppenheimer objected to the interrogatories on three grounds: (1) that the interrogatories were replete with vague and undefined terms; (2) that they called for Oppenheimer to speculate about what is known to people who are not within its control; and (3) that they called for Oppenheimer to identify persons whose knowledge is not contemporaneous with the matters that are the subject of the interrogatories, but who may have gained such knowledge after the fact. Despite its objections, however, Oppenheimer gave substantive responses to the interrogatories, identifying people it believed to have information relevant to the substance of the interrogatories. In view of the substantive responses, there is no useful purpose to be served in addressing at any length the parties' dispute over the language and meaning of both the interrogatories and the responses.

Oppenheimer has made clear in its submissions to the Court that, although it views certain terms in the interrogatories as being vague, it has provided in its responses the names of those individuals presently known to it who may have relevant knowledge with respect to the subject matter of the interrogatories in issue, with the exception of counsel. It has also acknowledged that if it learns of other people with knowledge it will supplement its responses. Although I believe that the wording of the interrogatories could have been clearer, and defendant's objections were somewhat academic and provocative, counsel for both parties should have been able to resolve this dispute without court intervention. In any event, I do not view Oppenheimer as having avoided its disclosure obligations under Rule 33 and plaintiff's request for sanctions is denied.

SO ORDERED.