**Robert STROUGO, Plaintiff,**

v.

**BEA ASSOCIATES, Defendant,**

and

**The Brazilian Equity Fund, Inc., Nominal Defendant.**

**No. 98 Civ. 3725(RWS).**

United States District Court, S.D. New York.

April 4, 2001.

As Amended April 12, 2001.

---

Wechsler Harwood Halebian & Feffer, by Joel C. Feffer, Daniella Quitt, of counsel, New York City, Rubin & Rubin, Chartered, by Ronald B. Rubin, of counsel, Rockville, MD, for Plaintiff.

Willkie Farr & Gallagher by Lawrence O. Kamin, of counsel, New York City, for defendant.

## OPINION

SWEET, District Judge.

Plaintiff Robert Strougo ("Strougo") has moved to compel the production of fourteen items listed in the privilege logs of defendant BEA Associates ("BEA"). BEA opposes the motion and claims attorney-client and work product privilege. For the reasons set forth below, the motion is granted in part and denied in part, and certain of the documents at issue shall be produced for in camera review.

### Prior Proceedings

The prior proceedings and factual background of this action are set forth in the prior opinions of this Court, familiarity with which is assumed. *See Strougo v. Bassini,* 112 F.Supp.2d 355 (S.D.N.Y.2000); *Strougo v. BEA Associates,* No. 98 Civ. 3725(RWS), 2000 WL 45714 (S.D.N.Y. Jan. 19, 2000); *Strougo v. Bassini,* No. 98 Civ. 3725(RWS), 1999 WL 249719 (S.D.N.Y. May 4, 1999); *Strougo v. Bassini,* 1 F.Supp.2d 268 (S.D.N.Y.1998).

The action arises from a 1996 rights offering (the "Rights Offering") by the Fund, a closed-end investment company, under which the Fund's existing shareholders were given the opportunity to purchase additional shares of newly issued Fund stock at a discount from market value. The complaint, filed by Fund shareholder Strougo on May 21, 1998, alleges that the Rights Offering constituted a breach of duty by BEA (the Fund adviser) and the Fund's directors because the offering purportedly diluted the shareholders' investments, imposed transaction costs on the Fund (such as investment banking fees), and was allegedly motivated by a desire to increase BEA's investment advisory fee.

Strougo filed the instant motion on January 6, 2001, seeking to compel the production of fourteen documents in BEA's privilege log. Specifically, Strougo seeks production of documents described in the privilege log as follows: (1) an October 9, 1998 "fax attaching various data;" (2) August 24, 1998 "Analyses data re: rights offering;" (3) April 29, 1997 "fax cover page attaching draft of Minutes of Board Meeting;" (4) redactions of "Board minutes re: litigation" from (a) November 4, 1997; (b) February 10, 1998; (c) May 8, 1998;

(d) May 12, 1998; (e) November 10, 1998; (f) May 11, 1999; (g) July 27, 1999; (h) November 9, 1999; (i) February 8, 2000; (j) & (k) May 8, 2000.[1] BEA opposed the motion in a brief filed on February 1, 2001, claiming both work-product and attorney-client privilege. Strougo filed a reply brief on February 14, 2001, alleging that the privileges claimed either did not apply or had been waived, whereupon the motion was deemed fully submitted.

### Discussion

### I. Legal Standards

#### A. Scope of Discovery

"In federal actions, discovery should be broad, and all relevant materials which are reasonably calculated to lead to the discovery of admissible evidence should be [discoverable]." *Morrissey v. City of New York*, 171 F.R.D. 85, 88 (S.D.N.Y.1997) (citing Fed. R.Civ.P. 26(b)(1)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Under this broad standard, all of the documents sought are relevant and, in the absence of a privilege, discoverable.

When claiming any sort of privilege, a party must "make the claim expressly and shall describe the nature of the documents . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5). Specifically, the Local Civil Rules applicable in this District require parties to identify the type of document, its general subject matter, date, and "such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressees of the document, and any other recipients shown in the document, and, where not apparent, the relationship of the author, addressees, and recipients to each other." Local Civil Rule 26.2(a).

■ In other words, the proponent of a privilege log must set forth facts therein that would establish each element of the claimed privilege as to each disputed document, pursuant to Local Civil Rule 26.2(a)(1), (c). *See Golden Trade, S.r.L. v. Lee Apparel Co.*, No. 90 Civ. 6291(JMC), 1992 WL 367070, *5 (S.D.N.Y. Nov. 20, 1992). The burden of the party withholding documents cannot be "discharged by mere conclusory or ipse dixit assertions." *von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir.), *cert. denied*, 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987) (*quoting In re Bonanno*, 344 F.2d 830, 833 (2d Cir.1965)).

#### B. Attorney–Client Privilege

■ A party asserting the attorney-client privilege bears the burden of showing: "(1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice." *United States v. Construction Prod. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996) (citations omitted); *see also In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1036 (2d Cir. 1984). The privilege "exists to protect not only the giving of professional advice to those who can act on it, but also the giving of information to the lawyer to enable [the lawyer] to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Thus, a client's communication with an attorney is protected under the attorney-client privilege as long as the above-mentioned elements are met.

■ The attorney-client privilege applies not only to individuals, but also to corporate entities. *See Upjohn Co. v. United States*, 449 U.S. 383, 391–92, 101 S.Ct. 677, 683–85, 66 L.Ed.2d 584 (1981); *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943–44 (2d Cir.1992). Therefore, although dissemination of privileged information to third par-

---

1. The motion also sought to compel a May 8, 1998 "Fax attaching memo re: no action request," but BEA has already provided this document to Strougo. (Def. Br. at 3 n. 4.)

ties generally waives attorney-client privilege, the distribution within a corporation of legal advice received from its counsel does not, by itself, vitiate the privilege. *See Upjohn,* 449 U.S. 383, 391–92, 101 S.Ct. 677, 683–85, 66 L.Ed.2d 584; *see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437, 442 ("since the decision-making power of the corporate client may be diffused among several employees, the dissemination of confidential communications to such persons does not defeat the privilege").

■ In addition, the "common interest" doctrine protects some communications that would otherwise waive the attorney-client privilege. *See generally Shamis v. Ambassador Factors Corp.,* 34 F.Supp.2d 879, 892 (S.D.N.Y.1999). The common interest doctrine typically applies where multiple persons are represented by the same party—"joint representation—and accordingly both clients are working together with a single attorney toward a common goal." *International Ins. Co. v. Newmont Mining Corp.,* 800 F.Supp. 1195, 1196 (S.D.N.Y.1992). The weight of authority suggests that the "common interest" rule can apply where parties are represented by separate counsel that engage in a common legal enterprise. *See United States v. Schwimmer,* 892 F.2d 237, 243–44 (2d Cir. 1989). This version of the "common interest" doctrine has been described as follows:

> A community of interest exists among different persons or separate corporations where they have an identical legal interest.... The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial. The fact that there may be an overlap of a commercial and legal interest for a third party does not negate the effect of the legal interest in establishing a community of interest.

*North River Ins. Co. v. Columbia Cas. Co.,* 1995 WL 5792, at *3 (S.D.N.Y. Jan. 5, 1995) (internal quotation omitted). "What is important is not whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal." *Id.,* 1995 WL 5792 at *4.

## C. *Work Product Privilege*

■ The work-product privilege is, as the Supreme Court has recognized, more broad than the attorney-client privilege. *See, e.g., In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2d Cir.2000) (*citing Hickman,* 329 U.S. at 508, 67 S.Ct. 385, 91 L.Ed. 451, and *United States v. Nobles,* 422 U.S. 225, 238 n. 11, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)). This privilege exists to protect "attorneys' mental impressions, opinions or legal theories concerning specific litigation" from discovery. *Horn & Hardart Co. v. Pillsbury Co.,* 888 F.2d 8, 12 (2d Cir.1989). Federal Rule of Civil Procedure 26(b)(3), which codifies the principles articulated in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), grants limited protection against discovery to documents and materials prepared "in anticipation of litigation." Rule 26(b)(3) provides in relevant part:

> a party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

■ The Second Circuit has interpreted the "in anticipation of litigation" requirement broadly. Documents should therefore be deemed prepared in "anticipation of litigation" if " 'in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.' " *United States v. Adlman,* 134 F.3d 1194, 1202 (2d Cir.1998) (quoting Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, 8 Federal

Practice and Procedure § 2024, at 343 (1994) (emphasis in original) (citations omitted)).

██ Materials need not be prepared solely for a litigation purpose in order to merit protection under the work-product privilege. *Adlman,* 68 F.3d 1495, 1501–02 (2d Cir.1995). "Where a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under this formulation merely because it is created in order to assist with a business decision. Conversely, it should be emphasized that the 'because of' formulation ... withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." *Adlman,* 134 F.3d at 1202. An attorney must show merely that the documents were prepared "with an eye toward litigation." *Id. (quoting Hickman,* 329 U.S. at 510–11, 67 S.Ct. 385) (internal quotations omitted).

██ Finally, the document in question must have been either obtained or "prepared by or for a party, or by or for his representative" in order to merit protection under the work product privilege doctrine. *In re Grand Jury Subpoenas Dated Dec. 18, 1981 & Jan. 4, 1982,* 561 F.Supp. 1247, 1257 (E.D.N.Y.1982) (McLaughlin, J.). *Accord Maloney v. Sisters of Charity Hosp. Of Buffalo,* 165 F.R.D. 26, 29–30 (W.D.N.Y.1995); *Weinhold v. Witte Heavy Lift, Inc.,* 90 Civ. 2096 (PKL), 1994 WL 132392 at *2 (S.D.N.Y. Apr. 11, 1994); 2 M. Silberberg, Civil Practice in the Southern District of New York, § 15.04 at 15–11 (2d ed.1999).

██ Documents that fall within·this privilege may include either "non-opinion work product," containing non-privileged facts, or "opinion work product," which comprises the attorney's opinions, judgments and thought processes. Opinion work product receives higher protection so that litigation strategy is not revealed, and a party seeking to discover it must show "extraordinary justification." *In re Sealed Case,* 676 F.2d 793, 809–10 (D.C.Cir.1982); *see also Upjohn Co. v. United States,* 449 U.S. 383, 401, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981) ("As Rule 26 and *Hickman* make clear, such work product cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship.").

#### D. *Waiver*

██ Once the party claiming privilege has met its initial burden, the party seeking production of the documents may still prevail by demonstrating either that an exception to the privilege applies or that the privilege has been waived. A privilege log must be received either within thirty days of a request for documents or by a date that is either agreed upon by the parties or set by the court. Fed.R.Civ.P. 34(b).

The failure to provide a timely privilege log or to describe the documents in conformity with the Local Rules may result in a waiver of the privilege. *See, e.g.,* Fed.R.Civ.P. 26(b)(5), Advisory Committee Notes ("To withhold materials without such notice is contrary to the rule ... and may be viewed as a waiver of the privilege or protection."); *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.,* No. 97 Civ. 4978, 2000 WL 1538003, *3 (S.D.N.Y. Oct. 17, 2000) (finding waiver of work-product privilege where defendants willfully failed to set forth either the parties or the subject matter of the documents in the privilege log such that "[t]he dearth of information in the index listing is so complete that the listing is the functional equivalent of no listing at all."); *Hurst v. F.W. Woolworth Co.,* 95 Civ. 6584(CSH), 1997 WL 61051, *6 (S.D.N.Y. Feb. 11, 1997) (finding of waiver may be appropriate where log is never or untimely provided); *Wilson v. New York City Housing Authority,* No. 96 Civ. 1765(SHS)(HBP), 1996 WL 524337, *2 (S.D.N.Y. Sept. 16, 1996) ("To the extent that defendants attempt to assert privilege, their failure to serve an index of privilege documents in conformity with [former] Local Civil Rule 46(e)(2) has resulted in waiver of any privilege they may have otherwise had."); *Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Intern., Inc.,* 130 F.R.D. 28, 32 (S.D.N.Y.1990) (by claiming "privilege" rather than specifying particular privilege as required by the local rules, defendant waived work product privilege).

522

■ Moreover, voluntarily disclosing the information contained in the documents to nonparties waives the attorney-client privilege, unless such disclosure was "necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit". *Ampa Ltd. v. Kentfield Capital LLC,* No. 00 Civ. 0508 NRB AJP, 2000 WL 1156860, *1 (S.D.N.Y. Aug. 16, 2000) (*quoting United States v. Kovel,* 296 F.2d 918, 922 (2d Cir.1961)) (Friendly, C.J.). *See also United States v. Schwimmer,* 892 F.2d 237, 243 (2d Cir.1989) (the attorney-client privilege may cover "communications made to certain agents of an attorney ... hired to assist in the rendition of legal services."). Thus, disclosure to an outside accountant whose expertise is crucial to the lawyer's assessment of his client's case would not waive the privilege, while disclosure to the client's accountant who was not involved in the litigation would waive the privilege. *Compare Kovel,* 296 F.2d at 922 (disclosure to outside accountant whose advice was necessary to litigation preparation did not waive privilege) *with Ampa Ltd. v. Kentfield Capital LLC,* No. 00 Civ. 0508 NRB AJP, 2000 WL 1156860, *1 (S.D.N.Y. Aug. 16, 2000) (board minutes not privileged where outside accountant was present and not involved in legal issue discussed) *and Nat'l Educ. Training Group, Inc. v. Skillsoft Corp.,* No. M8–85, 1999 WL 378337, *3–4 (S.D.N.Y. June 10, 1999) (same). *See also Summit Ltd. v. Levy,* 111 F.R.D. 40, 41 (S.D.N.Y.1986) ("the application of the attorney/client privilege to communications with an accountant depends upon whether the accountant is acting as a means of translating financial data for the attorney or rather is acting as a financial advisor").

■ Work product privilege may be waived by disclosure to adversaries, *see In re Steinhardt Partners, L.P.,* 9 F.3d 230 (2d Cir.1993), or to third parties where "the disclosure substantially increases the opportunity for potential adversaries to obtain the information," *Falise v. American Tobacco Co.,* 193 F.R.D. 73, 80 (E.D.N.Y.2000) (*quoting In re Pfizer Inc. Sec. Litig.,* No. 90 Civ. 1260, 1993 WL 561125, *6 (S.D.N.Y. Dec. 23, 1993)) (additional citation and internal quotations omitted). Nonetheless, "the inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." *United States v. Ackert,* 169 F.3d 136 (2d Cir.1999).

**II. Documents Claimed to be Privileged**

After reviewing the privilege log, viewing the documents in camera, and considering the legal arguments of the parties, the motion is hereby granted in part and denied in part.

**A. Financial Documents**

**1. October 9, 1998 Document**

■ The description of this ten-page item in the privilege log reflects that it is a "fax attaching various data" claimed to be protected from disclosure pursuant to the attorney-client privilege. (Rubin Aff. Ex. A.) The document was prepared by M. Pignataro, an employee of BEA, and sent to L. Kamin, an attorney representing BEA in this matter. (Def. Br. at 6; Rubin Ex. A.) Defense counsel's letter of November 28, 2000 further described this item as a "fax attaching certain financial information" and invoked the work-product privilege for the first time, on the grounds that it was prepared upon Kamin's request five months after the complaint was filed in this case. (Rubin Aff. Ex. C.)

Strougo contends that this description is so vague as to constitute "no listing at all," and that the Court therefore should find that the privilege has been waived. *A.I.A. Holdings,* 2000 WL 1538003 at *3. Moreover, Strougo argues that BEA has failed to meet its burden to show that the documents were obtained "because of" the prospect of litigation, and that, in any case, work product privilege has been waived because it was not timely invoked.

BEA invoked only the attorney-client privilege at the time it issued the privilege log, and first raised the work-product privilege in response to an inquiry from Strougo's counsel two weeks later. (Rubin Aff. Ex. B (stat-

ing that privilege log was received by fax on November 13, 2000).) Although the specific requirement that the privilege be specifically identified within thirty days of the request was not incorporated into Local Civil Rule 26.2 when that rule replaced former Local Civil Rule 46(e)(2) on April 15, 1997, courts have continued to read a timeliness requirement into the privilege log rule. *See, e.g.,* Local Civil Rule 26.2(c) (requiring that nature of privilege must be furnished in writing "at the time of the response to such discovery or disclosure"); *Sheikhan v. Lenox·Hill Hosp.,* No. 98 Civ. 6468(WHP)(HBP), 1999 WL 199010, *2 (S.D.N.Y. April 9, 1999); *Large v. Our Lady of Mercy Medical Center,* No. 94 Civ. 5986(JGK)THK, 1998 WL 65995, *4 n. 2 ("Former Local Rule 46 has been replaced by Local Civil Rule 26.2. The relevant substance is unchanged."). In a related context, the Second Circuit has stated its preference that parties "raise all objections at once, rather than in staggered batches, so that discovery does not become a 'game.' " *In re DG Acquisition Corp.,* 151 F.3d 75, 81 (2d Cir.1998) (considering party's objection to subpoena pursuant to Rule 45).

However, despite the delay in invoking the work-product privilege, this item merits such protection. Strougo's communications with BEA after the log was served indicate a laudable communicative problem-solving strategy rather than a scorched-earth approach to discovery. Moreover, Strougo has failed to show any harm arising from the fact that BEA first raised the work-product defense two weeks after it served the privilege log. *See, e.g., Hurst,* 1997 WL 61051 at *4 (considering harm as factor in assessing whether belated claim of privilege should be credited); *AFP Imaging Corp. v. Philips Medizin Systems,* No. 92 Civ. 6211(LMM), 1993 WL 541194, at *3, *4–*5 (S.D.N.Y. Dec. 28, 1993) (same). As such, the two week delay is not unreasonable, and will not in itself bar BEA's invocation of the work-product privilege.

The privilege log and accompanying explanation from counsel set forth all of the ele-

ments necessary for the work-product privilege to apply. The document was prepared at the request of BEA attorney Kamin, with an eye toward litigation, and necessary thereto. The date, author, addressee, and general substance of the fax have been set forth in the privilege log with reasonable particularity such that Strougo, using this description, could serve a sufficiently detailed subpoena duces tecum for this document. *See, e.g., Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946) (particularization must be "adequate, but not excessive," for the purposes of the relevant inquiry."); *U.S. v. International Business Machines Corp.,* 83 F.R.D. 97, 107 (S.D.N.Y.1979) (discussing requirement that documents sought be identified with "reasonable particularity"). Finally, BEA asserts that Strougo "has access to the financial information contained in the document from materials already produced." (Rubin Aff. Ex. C at 2.)

As BEA has met all of the requisite elements, this item is privileged. However, BEA is hereby directed to disclose to Strougo which previously disclosed documents contain the information contained in the disputed October 8, 1998 item.

#### 2. *August 24, 1998 Documents*

The privilege log describes the next disputed documents as "Analysis data re: rights offering" and claims work-product privilege. The November 28, 2000 letter from BEA's counsel explains that the document includes financial information that was "gathered and formatted"· by M. Manessis, an employee of non-party Bear Stearns Fund Management, Inc. ("Bear Stearns")[2] at the request of BEA counsel, and sent to BEA attorney, L. Kamin, and BEA employee, M. Pignataro, three months after the complaint was filed in this case. (Rubin Aff. Ex. C.) BEA alleges that this document is protected as "factual" work product because it was prepared by the "client's agent" at the direction of BEA's attorney. *See, e.g., Golden Trade,* 143 F.R.D. at 511.

---

**2.** Bear Stearns was the investment banking firm that served as dealer-manager for the Rights

Offering.

Strougo contends that this document is not privileged because (1) Bear Stearns is not a client of Willkie Farr & Gallagher ("Willkie Farr"), BEA's counsel; and (2) BEA has not shown that the documents were obtained due to the prospect of litigation rather than in the ordinary course of business.

On the first issue, BEA characterizes Bear Stearns as an "agent" of BEA such that its employees' communications with BEA's attorney are protected by its attorney-client privilege. However, the relationship between the preparer of the document and the attorney is not the dispositive factor. "If what is sought is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists." *Adlman*, 68 F.3d at 1499 (*quoting Kovel*, 296 F.2d at 922).

Finally, BEA alleges that it has already disclosed "the information contained in" these documents in prior disclosures, but that the "very manner in which the documents are organized would reveal attorney thought processes." (Rubin Aff. Ex. C at 2.) Inherent in this assertion is that these documents would not have been—and in fact were not—organized in this fashion in the usual course of business, but were so compiled only as a result of a request from a BEA attorney preparing the instant case.

The August 24, 1998 document shall be submitted for in camera review in order to determine whether it was produced for the purpose of litigation or in the ordinary course of business.

### B. *Board Minutes*

Strougo contends that BEA may not invoke the attorney-client privilege for the board minutes without showing just cause, because the corporation is a fiduciary that is expected to act for the benefit of shareholders, and disclosure furthers that goal. The Fifth Circuit established this "fiduciary exception" to attorney-client privilege in *Garner v. Wolfinbarger*, 430 F.2d 1093, 1102–04, *cert. denied*, 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971), holding that courts must consider several factors—including the number of beneficiaries whose interests are at stake in the lawsuit, the facial adequacy and

apparent good-faith of the plaintiff's claims, the importance of the information to the inquiring party's case, and whether the allegedly privileged communications concerned the lawsuit at issue—to decide whether a corporation has demonstrated sufficient cause to invoke the privilege against its shareholders in a derivative action. 430 F.2d at 1103–04.

 As BEA notes, while the *Garner* exception permits disclosure of communications relating to the conduct of an alleged action in proper circumstances, it does not permit disclosure of communications regarding the defense of a lawsuit. *See International Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1239 (5th Cir.1982). Therefore, the fiduciary exception need not be addressed for board minutes of meetings held after the complaint was filed in this action on May 21, 1998, including the documents from November 10, 1998; May 11, 1999; July 27, 1999; November 9, 1999; February 8, 2000; and May 8, 2000.

 Moreover, the logic of *Garner* does not require the disclosure of material that is protected under the work product doctrine. *See id.* at 1239 ("*Garner's* rationale indicates that it was not intended to apply to work product.") BEA claims that the redacted board minutes constitute work product, but has failed to sustain its burden. The board minutes at issue here were prepared in the ordinary course of business, and there is no indication that they revealed attorneys' litigation-related thought processes, which the work-product privilege seeks to protect, as opposed to other communications that may be protected under the attorney-client privilege. Fed.R.Civ.P. 26(b)(3); *see In re Subpoena Duces Tecum Served on Willkie Farr & Gallagher*, No. M8–85 (JSM), 1997 WL 118369, at *3 (S.D.N.Y. Mar. 14, 1997); *Dilaura v. Power Auth. of New York*, No. Civ. –85–500E, 1988 WL 43985, at *2 (W.D.N.Y. Apr. 29, 1988).

### 1. *April 29, 1997 Fax Cover Page and Draft Board Minutes*

The next set of documents BEA claims as privileged are dated April 29, 1997 and de-

scribed in the privilege log as "fax cover page attaching draft of Minutes of Board Meeting." (Rubin Aff. Ex. A.) The documents are from A. Wang, a Willkie Farr attorney representing BEA, to R. DelGuercio, a BEA employee, and copied to two other Willkie Farr attorneys and Marco Adelfio, an attorney at Morrison & Foerster who represents the outside directors of the Fund. The November 28, 2000 letter from BEA's counsel explains that these documents—draft minutes of the February 11, 1997 Board meeting—were withheld because they contained "attorney-authored marginalia," and because the fax cover sheet contains a "lawyer's message to the client." (Rubin Aff. Ex. C.)

In response to counsel's statement that Strougo would seek to compel production of the documents only if they pertained to by-law changes, renewal of advisory contracts and/or shareholder proposals, BEA disclosed that the documents did refer to a sub-advisory contract. (Rubin Aff. Exs. D, E.)

■ Strougo argues that disclosure of these documents to "third-party," Mr. Adelfio, waived the attorney-client privilege. In opposition, BEA alleges that the outside directors of the fund share a common interest with BEA such that BEA attorneys and counsel for the outside directors may communicate regarding ongoing legal action without fear of waiving the privilege. To extend the attorney client privilege on this basis, a party must show that (1) the communications were made in the course of a joint defense effort or that the clients share a common legal interest; (2) the statements were designed to further the common effort; and (3) the privilege has not been waived. *In re Subpoena Duces Tecum Served on New York Marine and General Ins. Co.*, No. M 8–85 MHD, 1997 WL 599399 (S.D.N.Y. Sept. 26, 1997). A lawsuit need not be pending for the common interest doctrine to apply. *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir.1989).

■ The disclosure to counsel for the outside directors did not waive the privilege because the outside BZL directors have a common interest with the defendant BEA directors in responding to plaintiff's allegations that the BZL directors were not inde-

pendent of BEA. *See United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989); *ECDC Environ., L.C. v. New York Marine & General Ins. Co.*, No. 96 Civ. 6033(BSJ)(HBP), 1998 WL 614478 (S.D.N.Y. June 4, 1998).

As the only portion of the document claimed to be privileged is the attorney-authored marginalia, BEA must produce the document with the attorney-authored marginalia redacted.

### 2. Board Minutes

■ As work-product privilege does not apply, the board minutes for meetings that took place before the litigation began must be produced unless BEA meets its burden to show they are protected by the attorney-client privilege, and that the presence of individuals outside the attorney-client relationship were necessary for the client to receive informed advice. *See Ackert*, 169 F.3d 136 (2d Cir.1999); *National Educ. Training Group., Inc. v. Skillsoft Corp.*, No. M8–85 (WHP), 1999 WL 378337, *4 (S.D.N.Y. June 10, 1999) (*citing United States v. Kovel*, 296 F.2d 918, 922 (2d Cir.1961) (Friendly, J.)).

BEA first claims that there is no proof that third parties were actually present in the meetings during the redacted portions. However, the minutes that have been produced specify when individuals left the meetings, which suggests that individuals not so identified remained, leaving up to nine non-directors or attorneys present in a given meeting. As such, BEA has failed to show that third parties were not present during the claimed attorney-client communications.

Although BEA claims that the privilege was nevertheless not waived because BZL had a reasonable expectation that the individuals, who were directors, attorneys, accountants or administrators of other funds would not disclose the information, this assertion is premised on an erroneous standard. Regardless of the client's subjective belief, the attorney-client privilege is waived for communications made in the presence of third parties who are objectively not necessary to informed attorney-client contact. *See id.* Having argued only that BZL reasonably

believed that the presence of non-directors or their attorneys was necessary to effective attorney-client communication, the defendants have failed to meet their burden of proving that their presence was in fact necessary to informed attorney-client communication.

Therefore, the redacted portions of the minutes of board meetings from November 4, 1997, February 10, 1998, May 8, 1998, May 12, 1998, November 10, 1998, May 11, 1999, July 27, 1999, November 9, 1999, February 8, 2000, shall be disclosed.

### Conclusion

For the foregoing reasons, the required documents shall be submitted for in camera review, and the non-privileged documents shall be produced to Strougo, within twenty days of this opinion.

It is so ordered.