WOMEN'S INTERART CENTER,
INC., Plaintiff,

v.

N.Y.C. ECONOMIC DEV.,
et al., Defendants.

No. 03 Civ. 2732(DAB)(RLE).

United States District Court,
S.D. New York.

July 20, 2004.

Marianne Meier Wang, Matthew D. Brinckerhoff, Richard D. Emery, Emery,

Celli, Cuti, Brinckerhoff & Abady, PC, New York City, for plaintiff.

## MEMORANDUM OPINION & ORDER

ELLIS, United States Magistrate Judge.

### I. INTRODUCTION

Women's InterArt Center, Inc. ("the Center"), a not-for-profit arts organization, filed this action on April 18, 2003. Among other things, the Center asserts that defendants unconstitutionally retaliated against it for asserting its federal rights to free speech and to petition the government. Specifically, the Center alleges that defendants unlawfully reneged on a deal to transfer real property to the Center in retaliation for various lawsuits brought by the Center against both the owner of the property that it rents, the City of New York; and the property's manager, the Department of Housing Preservation and Development ("HPD"). *See* Complaint ("Compl.") at ¶¶ 25–30, 39, 111–12; Letter from Brinckerhoff to the Court of October 21, 2003, at 1. The Center brings claims under various provisions of the First Amendment and the Fourteenth Amendment of the Constitution. *See* Compl. at 111–19, 128–36. The defendants include the City of New York; Jerilyn Perine, the Commissioner of the Department of Housing Preservation and Development; the New York City Economic Development Corporation and its president, Andrew M. Alper; Daniel Doctoroff, a Deputy Mayor of the City of New York; and Michael Bloomberg, the Mayor of the City of New York ("Defendants"). Defendants have not yet filed an answer. The Honorable Deborah A. Batts directed the parties to focus discovery on the Center's federal law claims [1] so that the Court might determine if it has subject matter jurisdiction. *See* Transcript of Conference before District Judge Deborah A. Batts, June 19, 2003 ("Tr.") at 41–42. The Center and Defendants have withheld certain documents as privileged. For these disputed documents, Defendants assert (1) the deliberative process privilege;

---

1. In its complaint, the Center also includes claims under New York state law for violation of its rights to free speech and petition, denial of its right to equal protection, breach of contract, promissory estoppel, and tortious interference with contract/contractual performance. *See* Compl. at ¶¶ 120–27, 137–62.

(2) the attorney-client privilege; or (3) the work product protection, while the Center relies on the attorney-client privilege. The documents in question have been submitted to the Court for *in camera* review of the applicability of the claimed protections.

## II. ANALYSIS

■ Because the claims in question at this juncture are federal in nature, the Court will review the privileges asserted by the parties under federal common law principles. *See* FED.R.EVID. 501. Each party "bear[s] the burden of establishing the facts on which their asserted privileges depend." *See Burke v. New York City Police Dep't*, 115 F.R.D. 220, 224 (S.D.N.Y.1987).

### A. Deliberative Process Privilege

Defendants claim that the deliberative process privilege is applicable to certain documents because they "relate to the decision-making process" and were prepared "to discuss, consider and analyze options, and alternatives in order to assist the decision-makers in arriving at various decisions." Letter from Shapiro to Wang of October 14, 2003, at 1. The Center counters that even if Defendants may assert the deliberative process privilege, the Center's claim places Defendants' decisionmaking at issue and thus defeats the privilege. *See* Letter from Wang to Judge Batts of October 15, 2003, at 1.

■ The deliberative process privilege may be available to government officials who do not wish to disclose documents that "reflect discussions within or between agencies concerning policy or other decisional choices" and that include "analyses or suggestions designed to assist a government decision-maker in coming to a decision about a specific issue." *Dr. Michael J. Galvin v. Michael Hoblock, Jr., et al.*, 2003 WL 22208370, at *2, 2003 U.S. Dist. LEXIS 16704, at *5 (S.D.N.Y. Sept. 24, 2003). To invoke this privilege, Defendants must show that "1) the materials were part of a deliberative process by which policies or decisions are formulated . . ., and 2) that the materials were truly of a predecisional, or advisory or recommendatory nature, or expressed an opinion on a legal or policy matter, or otherwise were reflective

of a deliberative process." *Burke*, 115 F.R.D. at 231 (*quoting Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 5 (N.D.N.Y. 1983)). The deliberative process privilege is based on the notion that unless confidentiality can be ensured, communications to and within the government will be stifled. *See id.*

### B. Attorney–Client Privilege

The Center maintains that Defendants, through their in-house counsel, are using the attorney-client privilege to shield production of an overly broad set of documents. *See* Letter from Wang to the Court of November 10, 2003, at 4. It asserts that in-house counsel for Defendants participate in a wide range of nonlegal functions, and that not all of the documents that they handle should properly be privileged. *See id.* In addition, the Center points out that some withheld documents involved communications between non-lawyers, and thus should not qualify for the attorney-client privilege. *See id.* Defendants, for their part, challenge the Center's assertion of the privilege, claiming that the Center is using the privilege to shield documents that involve business transactions, and not legal disputes. *See* Letter from Shapiro to Wang of November 5, 2003, at 1.

■ When asserting the attorney-client privilege, a party must show that there exists "1) a communication between client and counsel, which 2) was intended to be and was in fact kept confidential, and 3) made for the purpose of obtaining or providing legal advice." *Robert Strougo v. BEA Assocs., et al.*, 199 F.R.D. 515, 519 (S.D.N.Y.2001) (*quoting United States v. Construction Prod. Research, Inc.*, 73 F.3d 464, 473 (2d Cir.1996)). The privilege's purpose is "to encourage full and frank communication between attorneys and their clients," thus promoting "broader public interests in the observance of law and administration of justice." *Upjohn Co., et al. v. United States, et al.*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Under the attorney-client privilege, it is the communication between the client and the attorney itself that is protected, not the underlying facts. *See id.*, 449 U.S. at 395–96, 101 S.Ct.

677 (quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D.Pa. 1962)). In addition, the privilege applies only to communications for legal, not business, advice. *See In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1037 (2d Cir.1984).

## C. Work Product Protection

Defendants have withheld several items on work product grounds dating from August 2002. *See* Letter from Shapiro to the Court of April 7, 2004 [erroneously dated "2003"], at 1–2. They claim August 2002 is the operative starting point because "defendants reasonably believed that litigation was a reasonable possibility" at that time. *Id.* In contrast, the Center claims that the work product doctrine did not come into play until December 10, 2002, when Defendants informed the Center that it would be terminating their alleged contract. *See* Letter from Wang to the Court of April 5, 2004, at 1.

 Federal Rule of Civil Procedure 26(b)(3) directs that "a party may obtain discovery of documents and tangible things otherwise discoverable … and prepared in anticipation of litigation … only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." As stated in Rule 26(b)(3), which codifies the work product principles set forth in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), work product protection is broader than the attorney-client privilege, *see Strougo*, 199 F.R.D. at 520, and is not absolute. This protection guards "attorneys' mental impressions, opinions or legal theories concerning specific litigation" from disclosure in discovery. *Id.* (quoting *Horn & Hardart Co. v. Pillsbury Co.*, 888 F.2d 8, 12 (2d Cir.1989)). As the Second Circuit has indicated, a document should be construed as prepared "in anticipation of litigation" if, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *See United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir.1998)(alteration in original)(quoting 8 Charles Alan Wright, Arthur R. Miller, and Richard L. Marcus, *Federal Practice and Procedure § 2024*, at 343 (2d ed.1994)).

After a review of the disputed items submitted *in camera*, the Court makes the following findings regarding production. All documents are referenced by their numbers as noted in the privilege logs, since not all items appear to have Bates stamp numbers.

## D. Documents Challenged by the Center

### 1. Defendants' Documents 2–6

 Defendants claim that items 2 through 6 are protected by the attorney-client privilege. Privilege List in Connection With Defendants' Responses to Plaintiff's First Consolidated Set of Interrogatories and Document Requests at 3 ("Def. Privilege Log"); *see* Letter from Shapiro to the Court of April 7, 2004, at 1–2. These items, however, contain largely factual information. Since the attorney-client privilege protects communication between the client and the attorney, and not the underlying facts, *see Upjohn Co., et al. v. United States, et al.*, 449 U.S. 383, 395–96, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981)(quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D.Pa. 1962)), this factual information must be disclosed. Item 2 (actually two items), a status report with handwritten edit notes containing only factual background information regarding the Center's proposed project to renovate the building it intends to purchase from the City, should therefore be produced in its entirety. Documents 3, 4, and 5 are varying copies of the same document—4 and 5 containing handwritten additions. Neither the document nor the handwritten additions qualify for the attorney-client protection. The information discussed is commercial or business in nature, rather than legal. *See In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1037 (2d Cir.1984). Finally, Document 6 contains largely factual information, and should be produced.

### 2. Defendants' Documents 7, 18, 113, 118–19

■ Defendants assert that these documents are protected by the attorney-client privilege. *See* Letter from Shapiro to the Court of April 7, 2004, at 1–2. Defendants appear to believe that handwritten notes by lawyers constitute privileged information. Since these notes appear to relate to business information and Defendants have provided no explanatory supplements, they have not sustained their burden. Indeed, Defendants seem unable to declare with any certainty who received these notes. Consequently, they have failed to show application of attorney-client privilege on these grounds.

### 3. Defendants' Documents 17, 35, 60

■ Defendants have asserted the attorney-client privilege for these items. They include draft letters between non-lawyers, some attached to e-mail correspondence involving counsel. Item 17 is a draft letter from Paul D. Cataldo at the Office of Management and Budget to Curt Dempster of the Ensemble Theatre Group. Items 35 and 60 include draft letters from Katherine Collignon of the Economic Development Corporation to Marguerite Lewitin of the Center. In item 60, the accompanying e-mail is addressed to Meredith Jones, an attorney, for her review. The draft letters contain nothing of a confidential, legal nature. Generally, a draft letter to be sent to a third party "removes the cloak of confidentiality necessary for protection under the attorney-client privilege." *Klaus Renner v. Chase Manhattan Bank, et al.,* 2001 WL 1356192, at *8, 2001 U.S. Dist. LEXIS 17920, at *26 (S.D.N.Y. Nov. 1, 2001)(*quoting U.S. Postal Serv. v. Phelps Dodge Refining Co.,* 852 F.Supp. 156, 163 (E.D.N.Y.1994)). Such documents retain their privilege if "they were prepared for the purpose of obtaining legal advice and/or contain information a client considered but decided not to include in the final version ...," or if it is demonstrated that a confidential communication was removed from the final document. *Id.* Defendants have failed to establish that these drafts are protected by the attorney-client privilege. The e-mail addressed to Jones accompanying the draft letter in document 60 should not be produced, however, since it is a communication to counsel within the meaning of the attorney-client privilege.

### 4. Defendants' Documents 29–31, 33, 115–117

■ Defendants assert that documents 29–31, 33, and 115–117 are subject to the deliberative process privilege and therefore should not be produced. Among other requirements, this privilege demands that the documents be "actually ... related to the process by which policies are formulated." *Nat'l Cong. for Puerto Rican Rights v. City of New York,* 194 F.R.D. 88, 92 (S.D.N.Y.2000)(*quoting Hopkins v. United States Dep't of Housing and Urban Dev.,* 929 F.2d 81, 84 (2d Cir.1991)); *see also Burke,* 115 F.R.D. at 231. These documents, which appear to address various contractual and property disputes, do not evidence any policy-oriented discussion. As a result, they should be produced.

### 5. Defendants' Documents 41, 42, 53–57, 59, 61, 62, 68

■ Of the documents for which Defendants assert work product protection, documents 41, 42, 53–57, 59, 61, 62, and 68 are dated from September 9, 2002, to December 6, 2002. These are the only documents that pre-date December 10, 2002, which is the date from which the Center claims that work product protection should attach, and thus are in dispute on work product grounds. Documents 41, 42, 53, and 54 contain factual information that does not include any materials that could properly be termed "attorneys' mental impressions, opinions or legal theories," *Strougo v. BEA Assocs., et al.,* 199 F.R.D. 515, 520 (S.D.N.Y.2001)(*quoting Horn & Hardart Co. v. Pillsbury Co.,* 888 F.2d 8, 12 (2d Cir.1989)), and thus do not trigger work product protection. Documents 55 and 56 are co-authored by attorneys and non-attorneys, and evince a definite concern about litigation. Documents 57 and 59 contain legal conclusions by attorneys, are protected by the attorney-client privilege, and should not be disclosed. Documents 61, 62, and 68 include drafts of letters written by

attorneys contemplating the language of Defendants' termination letter to the Center. Though they may not be protected by the attorney-client privilege, as discussed above, they do invoke work product protection since they contain attorneys' mental impressions, and are directly focused on the subject of incipient litigation. As a result, they also should not be produced.

### 6. Defendants' Documents 39–40, 42, 45, 47–49, 63, 78, 84, 90, 96

Finally, the Center alleges that certain documents cannot be withheld on attorney-client privilege grounds because they are between non-lawyers. Though some of the documents include forwarded correspondence from attorneys, all of them contain only factual, not confidential, information. As a result, they should be produced.

### E. Documents Challenged by Defendants

### 1. The Center's Documents 1–3, 5–14, 16–34

Defendants allege that the Center's documents 1–3, 5–14, and 16–34 should not be protected by the attorney-client privilege because their counsel functioned only in a business, not legal, capacity regarding these communications. Many of these documents do evidence clearly legal advice, however. For those matters discussed that are not clearly legal, the Center's redactions involve information that is not relevant to the claims at issue here. Since these documents are either irrelevant, or protected by the attorney-client privilege or the work product doctrine, they need not produced.

### III. Conclusion

The parties are directed to produce all non-privileged documents as discussed above within one week from the date of this order.