Joseph HENRY and Michael Malinsky, Plaintiffs

v.

CHAMPLAIN ENTERPRISES, INC., d/b/a/ CommutAir, Anthony Von Elbe, John Arthur Sullivan, Jr., Ernest James Drollette, Andrew Price, William L. Owens, Champlain Air, Inc., and U.S. Trust Company of California, N.A., Defendants.

No. Civil No. 01–CV–1681(DNH/RFT).

United States District Court, N.D. New York.

Jan. 10, 2003.

Terence J. Devine, DeGraff, Foy Law Firm, Albany, NY, Ann Marie LaBue, phv, Gary D. Greenwald, phv, Shayne, Greenwald Law Firm, Columbus, OH, for Plaintiffs.

Edward R. Conan, Michael G. Langan, Bond, Schoeneck Law Firm, Syracuse, NY, for Champlain Enterprises, Inc., Anthony Von Elbe, John Arthur Sullivan, Jr., Ernest James Drollette, Andrew Price, William L. Owens, and Champlain Air, Inc.

Edward A. Scallet, phv, Groom Law Firm, Washington, DC, for U.S. Trust Co. of California, N.A.

*MEMORANDUM–DECISION
AND ORDER*

TREECE, United States Magistrate Judge.

Presently before this Court are the parties' respective motions seeking to address discovery disagreements. Succinctly, the Plaintiffs complain that: (1) the Defendants' responses to requests to admit are inadequate; and (2)

Defendants failed to produce requested documents, relying incorrectly upon the attorney-client privilege as a shield from their disclosure. The Defendants' complaints briefly are: (1) Plaintiffs counsel improperly raised the attorney-client privilege at the Plaintiffs' depositions to thwart their effort to elicit facts from the Plaintiffs to support the allegations in their complaint; and (2) that they should be permitted to inquire into off the record conversations between Plaintiff Henry and his counsel during a break in his deposition.[1]

## BACKGROUND

The Plaintiffs prosecute this lawsuit pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., and N.Y. Bus. Corp. Law § 626. The Plaintiffs are employees of Defendant Champlain Enterprises, Inc., d/b/a CommutAir ("CommutAir"), which was incorporated in 1987, and participants in the company's "Employee Stock Ownership Plan" ("ESOP"). The individual Defendants are either officers, directors or shareholders of CommutAir and may also serve as fiduciaries, in some capacity (probably as members of the administrative committee), with regard to ESOP. Defendants Von Elbe, Sullivan, and Drollette were the original founders of CommutAir and held, and may still hold, equal shares of its common stock. See Compl., ¶¶ 1, 24 (Docket No. 1).

It appears that in January 1994, CommutAir established the ESOP, and on or about March of the same year, the ESOP purchased 540,000 shares of preferred stock in CommutAir for a purchase price of $60,000,000. Docket No. 1, ¶¶ 28–35. Plaintiffs charge that this purchase price was over-inflated and that ESOP fiduciaries breached their fiduciary obligation in several respects resulting in damages to the plan. Id. at ¶¶ 1, 36–42. The Plaintiffs further complain of diversion of corporate assets, corporate waste and breach of fiduciary duties in that the Defendants sold four or more planes without adequate consideration. Id. at ¶¶ 78–98. Plaintiffs seek a restoration of all losses related to the preferred stock purchase, removal of the trustees to the plan, injunctive relief and punitive damages. Id.

On May 31, 2002, the Plaintiffs served upon the Defendants 148 Requests for Admission to which the Defendants initially responded on July 16, 2002. After an exchange of correspondence discussing the adequacy of the responses, the Defendants served Supplemental and Amended Responses to the Requests for Admission on August 19, 2002. Further correspondence was exchanged on the adequacy of the subsequent and amended responses before this motion was made.

This Court is unclear when the demands for documents were served upon the Defendants but it does appear that the parties have been arguing over the applicability of the attorney-client privilege to certain documents since February 2002. The Defendants have provided this Court with an extensive attorney-client privilege log on November 13, 2002.

With regard to the challenges to the Responses to the Requests for Admission, the Plaintiffs distilled their complaints into three categories: (1) Responses to Request Nos. 2, 4, 5, 91, 98, 107 and 144 lack specific, detailed and complete responses, and further the answers are calculated to avoid taking a position; (2) Request Nos. 99–100, 108–110, 119–121 and 133–138 are not answered properly in that the Defendants provide a response for which a request to admit was not submitted; and (3) Responses to Request Nos. 1, 38, 54, 68 and 115 are incomplete.

## DISCUSSION

### Admissions

Fed.R.Civ.P. 36(a) states straightforwardly with rather steep specificity the rules regard-

---

1. This Court will consider the following documents in rendering this decision. For the Plaintiffs: (1) November 6, 2002 letter-memorandum with exhibits; (2) November 14, 2002 letter-memorandum; November 22, 2002 letter-memorandum with exhibits; and (4) December 9, 2002 letter-memorandum with exhibits. For the Defendants: (5) November 12, 2002 letter-mem-

orandum and, (6) November 20, 2002 letter-memorandum with exhibits. The Court is also reviewing the Defendants' Responses to the Request for Admission and their Supplemental and Amended Responses to the Request for Admission provided by the Plaintiffs by a letter dated November 13, 2002.

ing Requests for Admissions. In pertinent part, it reads:

> A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the truth of any matters within the scope of Rule 26(b)(1) set forth in the request that relate to statements or opinions of fact or of the application of law to fact, including the genuineness of any documents described in the request ... Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request ... the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter ... If objection is made, the reasons therefor shall be stated. The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. A denial shall fairly meet the substance of the requested admission, and when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder. An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that the party has made reasonable inquiry and that the information known or readily obtainable by the party is insufficient to enable the party to admit or deny.

Requests for Admissions are not a discovery device much like interrogatories, demand for documents, or depositions, nor are they to be considered substitutions for them. *T. Rowe Price Small–Cap Fund, Inc. v. Oppenheimer*, 174 F.R.D. 38, 42 (S.D.N.Y.1997); James Wm. Moore., Moore's Federal Practice ¶ 36:02 (3d ed.2002). Discovery pleadings are expected to elicit and expound upon the facts of the matters, whereas, the Requests for Admission essentially, and hopefully, limit the factual issues in the case. Considering that one purpose for such Requests is to narrow the issues of the case, a "weeding out of the facts" if you will, they are designed to reduce trial effort and promote litigation efficiency. *Booth Oil Site Admin. Group v. Safety–Kleen Corp.*, 194 F.R.D. 76, 79 (W.D.N.Y.2000). These Requests and corresponding answers are expeditious, efficient resolutions of factual issues and may, to a considerable degree, when propounded early in the litigation, control the cost of discovery as well. More important, the binding effect of Admissions is intended to lend clarity to the presentation of disputed facts in the litigation.

▇ In order for this to be an orderly procedure, the requesting party bears the burden of setting forth its requests simply, directly, not vaguely or ambiguously, and in such a manner that they can be answered with a simple admit or deny without an explanation, and in certain instances, permit a qualification or explanation for purposes of clarification. *Booth Oil*, 194 F.R.D. at 79; *Diederich v. Department of the Army*, 132 F.R.D. 614, 619 (S.D.N.Y.1990); *T. Rowe Price*, 174 F.R.D. at 42; Moore's Federal Practice, ¶ 36.10[6]. That is, Requests for Admissions should be drafted in such a way that a response can be rendered upon a mere examination of the request. *Diederich*, 132 F.R.D. at 619. To facilitate clear and succinct responses, the facts stated within the request must be singularly, specifically, and carefully detailed. *Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y.1992); *Diederich*, 132 F.R.D. at 619.

The responding party is expected to admit unless they disagree with the request, then he or she must deny or object. That "denial must be forthright, specific and unconditional." *Booth Oil*, 194 F.R.D. at 80; Moore's Federal Practice ¶ 36.15[5][a]. The intended impact of an admission is to conclusively establish the admitted fact unless the court permits a withdrawal or amendment of the admission. Fed.R.Civ.P. 36(a).

There will be times, however, when the answer cannot be a succinct yes or no, and a qualification of the response is indeed necessary. Under these circumstances, the answering party is obligated to specify so much of its answer as true and qualify or deny the remainder of the request. Moore's Federal Practice ¶ 36.11[5]. "Generally, qualification

is permitted if the statement, although containing some truth, ... standing alone out of context of the whole truth ... convey[s] unwarranted unfair references." *Diederich,* 132 F.R.D. at 619. These qualifications are to provide clarity and lucidity to the genuineness of the issue and not to obfuscate, frustrate, or compound the references. Moore's Federal Practice ¶ 36.10[6].

■ As mentioned above, there is an alternative to denying the requested admission. The party is permitted to object to the request or a particular aspect of the request. This requires the responding party to "set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." *Herrera v. Scully,* 143 F.R.D. at 548. If the objection is only to a portion of the request, the responding party is required to unambiguously answer that portion of the request to which the objection does not apply. *Id.* at 548; Moore's Federal Practice ¶ 36.11[5][c]. An unjustifiable objection may be subject to sanctions. Fed.R.Civ.P. 36(a) & 37(c).

■ Furthermore, these objections must be directed and specifically related to a specific request. General objections without any reference to a specific request to admit are meritless. *Diederich,* 132 F.R.D. at 616.[2]

■ Additionally, to the extent that the answering party is incapable of providing a response with the information reasonably available to it, he or she must so apprise the requesting party. But this answer encompasses more than a mere elocution. Rule 36 requires the responding party to make a reasonable inquiry, a reasonable effort, to secure information that is readily obtainable from persons and documents within the responding party's relative control and to state fully those efforts. *T. Rowe Price,* 174 F.R.D. at 43. Moore's Federal Practice, ¶ 36.11[5][d]. Such reasonable inquiry includes an investigation and inquiry of employees, agents, and others, "who conceivably, but in realistic terms, may have information which may lead to or

furnish the necessary and appropriate response." *T. Rowe Price,* 174 F.R.D. at 43–44 (citations omitted). The inquiry may require venturing beyond the parties to the litigation and include, under certain limited circumstances, non-parties, but surely not strangers. *Id.* at 44; *Diederich,* 132 F.R.D. at 620. The operative words then are "reasonable" and "due diligence." There are several consequences for failing to properly answer. If the Court determines an answer does not comply with Rule 36, it may direct that the matter be deemed admitted or that an amended answer be served. Fed. R.Civ.P. 36(a). Or, if warranted, the Court may order that the final disposition of the request be preserved to a pretrial conference. *Id.* But, more importantly, if a party fails to admit the genuineness of any document or the truth of any matter as requested, and if the requesting party proves these facts, the court can order the responding party to pay reasonable attorney fees incurred to prove such facts. Fed.R.Civ.P. 37(c)(2); *Herrera,* 143 F.R.D. 545.

### Requests for Admissions Nos. 2, 4, 5, 91, 98, 107 and 144.

■ Plaintiffs assert that the Defendants failed to provide specific, detailed and complete responses to these Requests. More specifically, these requests concern contents of specific documents purportedly relevant to this case, and the Plaintiffs charge that the responses provided are deficient, non-responsive, and "impermissibly calculated to avoid taking any position whatsoever regarding the contents and meaning of key documents relevant to the dispute," relying upon *Booth Oil v. Safety–Kleen Corp.,* 194 F.R.D. 76 (W.D.N.Y.2000). Defendants contend otherwise by affirming their responses as proper and appropriately qualified. They further argued that reliance upon *Booth Oil* is misplaced and that this ruling is *sui generis.* There is no disagreement, however, between the parties that a request to admit the accuracy of quoted textual material from a partic-

---

**2.** It is worth noting that objections claiming the requests to be burdensome or that the opposing party has knowledge of the matter or could independently investigate will be unavailing. *Diede-*

*rich,* 132 F.R.D. at 617; *See* Moore's Federal Practice, ¶ 36.11[5][c]. Neither will objecting that a document "speaks for itself" be considered proper. *Id.; Booth Oil,* 194 F.R.D. 76.

ular document is improper under the controlling statutory scheme. *Id.* at 80.[3] The Plaintiffs, in essence, were, in many instances, seeking an interpretation of particular documents.

In 1970, Rule 36(a) was amended to expand requests to admit beyond those of the facts to now include matters that relate to statements or opinions of fact or of the application of facts. The purpose of this amendment was to resolve the conflict among the courts upon the breadth of the inquiry; yet, it appears, at least for the following discussion, that it did not fully complete that mission. *See* Fed.R.Civ.P. 36 Advisory Committee's Notes.

In *Booth Oil,* the plaintiffs sought admissions as to three relevant agreements. Several of the requests to admit included verbatim text of various provisions of the agreement to which the defendant objected as seeking improper admission to the interpretation of a document and that the documents speak for themselves. In other requests to admit, copies of particular pages of documents were incorporated into the request and the defendant was asked to admit that such provisions carry a particular meaning. The defendant objected on the grounds the requests "improperly call for an opinion, a conclusion of law, and seek an admission to the interpretation of the document, [and] improperly calls for hearsay, opinions, and speculation." *Id.* at 79. The court first noted that the 1970 amendment of Rule 36 specifically authorized a request for an admission of an opinion of facts or the application of law and further opined that it is permissible to request that a party admit or deny a request for the accuracy of quoted material from a particular document relevant to the case. *Id.* at 80, *see also* Moore's Federal Practice, ¶ 36.10[9].

The *Booth* court continued its analysis by stating it is generally held that questions of contractual meaning or intent are questions of fact at trial, citing *Bourne v. Walt Disney,* 68 F.3d 621, 629 (2d Cir.1995). Therefore, the court further reasoned "a statement of a

party's understanding of the meaning of the document is at issue in the case, and where the question of the meaning of the document is at issue in the case, a request directed to another party seeking an admission or denial of a document's meaning or intent by that party as stated in the request relates to a statement of fact, and is authorized by Rule 36." *Id.* at 80 (citing *Diederich,* 132 F.R.D. at 617 ("A request for admission as to the **meaning of a document** or government regulation is simply a request for defendant's admission of having understood the rule, during the period at issue, in a manner concurring with the meaning set forth by plaintiff. This may be simply admitted or denied by defendant.") (emphasis added)). For this, and other reasons, the court directed that this type of request to admit be answered. Similarly, the *Booth* court found requests that seek admission on hearsay are authorized by Rule 36 as well. *Id.* at 81

There are current precedents within the Second Circuit that hold differently, however. These courts hold rather succinctly, without conducting an analysis to the same extent as *Booth Oil,* that requests for admission that seek interpretations of documents are improper. *United States v. Consolidated Edison,* 1988 WL 138275, *2 (E.D.N.Y. Dec.15, 1988); *Bausch & Lomb, Inc. v. Alcon Labs., Inc.,* 173 F.R.D. 367, 377 (W.D.N.Y.1995). To challenge the persuasiveness of these two cases and others cited by the Defendants, the Plaintiffs point out that they are based (though discuss is the more appropriate assessment of what the courts did) upon pre–1970 precedents, before the amendment to Rule 36, when all of the confusion existed on whether such an inquiry is appropriate. The Plaintiffs' observation is accurate with the exception that *Consolidated Edison* cites to *C. Wright, A. Miller & R. Marcus Federal Practice and Procedures § 2259* in support of this proposition that interpretation of documents is an improper request. *Id.* at *2. To compound this current confusion, it appears that we have two U.S. Magistrate Judges in the Western District of New York (Scott and

---

**3.** In a similar vein, this expansion of this type of inquiry does include mixed issues of fact and law but does not apply to pure matters of law. *Booth*

*Oil,* 194 F.R.D. at 81; *Diederich,* 132 F.R.D. at 618; Moore's Federal Practice, 36.10[8].

Foschio) arriving at different interpretations of Rule 36 on this issue. Magistrate Judge Scott let stand a party's response and ruled that requests which seek admissions to interpretations of documents are improper. *Bausch & Lomb, Inc.,* 173 F.R.D. at 377 (citing *Buff Corp. v. Marcelle,* 20 F.R.D. 139 (E.D.N.Y.1957); *Pittsburgh Hotels Ass'n v. Urban Redevelopment Authority of Pittsburgh,* 29 F.R.D. 512 (W.D.Pa.1962); *Anderson v. United Air Lines,* 49 F.R.D. 144 (S.D.N.Y.1969)). Magistrate Judge Foschio noted that the factual nature of the requests in *Bausch & Lomb* was not revealed thus it was difficult for him to determine if the requests to admit were similar for precedential effect, concluding that *Bausch & Lomb* did not "necessarily exclude the determination reached here." *Booth Oil,* 194 F.R.D. at 81–2. To settle this score, it must be observed that the advisory committee notes of 1970 seem to suggest that the amendment to Rule 36 which included requests as to opinions may also have encompassed "interpretations of documents" into the statutory scheme.

With conflicting precedents aside, this Court finds more determinative as to the extent to which an "interpretation inquiry" may be answered is the complexity of the document, which is at issue in the case. The more complicated the document, the stronger the objection to such an inquiry because the complexity obscures the Rule 36 intent to have simple and definitive answers. The determination of the degree of complexity of a document, in order to further determine the adequacy of any response or the permissibility of an objection, can only occur on a case by case basis. This is no small order for the reviewing court, especially where, as in this case, the parties even disagree on whether the documents in question are complicated.

Before springing into action in reviewing these Requests for Admissions, this Court must first address the Defendants' list of General Objections. In the Supplemental and Amended Responses to Requests for Admissions, the Defendants preface their responses with four General objections. Rule 36 is quite clear that the objection must be addressed to the specific matter with reasons "therefore stated." This global guard tactic is greatly frowned upon and in the scheme of things are found "substantially without merit." *Diederich,* 132 F.R.D. at 616. Unless these objections are raised as to a specific request to admit, this Court will ignore them completely.

**Specific Request for Admissions** [4]

*Request Nos. 2, 4, 5.* The Defendants' objections as to phrases "acting on behalf of CommutAir" are well taken. The scope of agency is at odds, or at least vague, with the employment of this terse statement. However, the Defendants' qualifying answers compounds the confusion, and the last three lines of their answer are unwarranted. To turn the request on its head, then direct the Court and the Plaintiffs to read the document, and then to invite Plaintiffs to identify the line or page in the exhibit on which they assert the referenced statement appears, is improper and to a degree, contumacious. This charge and language will be stricken from the answers. Moreover, the Defendants could have easily cleared up this matter by stating that Price, the President of CommutAir, was an agent whose act or actions were binding or not, or could have provided their understanding as to what "acting on behalf of" means. The Defendants are directed to amend their response accordingly.

*Request Nos. 91, 98.* As an example of these trilogy of requests, Plaintiffs ask the Defendants to admit that "Owens opinion" did not express an opinion regarding ESOP's compliance with the provisions of ERISA. These requests call for a simple admit or deny, notwithstanding Plaintiffs' objection. The Court does not have the document in question, which is described as complicated, but the response should be rather basic: either there is an opinion within the document, or there is not, that can be answered yes or no. The Defendants are directed to amend their response accordingly.

*Request No. 107.* The Defendants' initial objection is well taken, and yet the Defen-

---

4. The Court will address the specific dispute of a response succinctly and forfeit identifying the full text of the Request and Response for the sake of brevity.

dants should state emphatically if there are inaccurate facts in the question, rather than quibble if an IRS agent speaks for the IRS in terms of valuation. The remainder of its answer ($90,000,000 is less than half of $200,000,000), is an attempt to be cute, inviting scorn and, evidently, this motion. This type of answer will not be tolerated. To add clarity to the request, the Plaintiffs may propound a clearer request or it can stand on their present request. If the Plaintiffs choose the latter, the Defendants are directed to amend their response accordingly.

*Request No. 144.* This Court rejects the Defendants' objection to the request. Whether the document is extensive and complicated, this Court does not know, but the inquiry is not. In fact, the last line, without the platitudes, is the appropriate answer. Defendants are to amend their response accordingly.

*Request Nos. 98–100.* This Court has concerns with these responses. First, Defendants in responding to the requests unfortunately repeat, "objects on the grounds that Request for Admission **No. 91** ...." The Court does not find that the Plaintiffs are referring to or incorporating other responses, but just made a typographic error. I'm confident that the objection made was referring to the specifically numbered request. However, this should be changed for clarity sake. The Court has already addressed Defendants' objection based upon interpreting the meaning of a complicated document and referring "the Court and the Plaintiffs to review the document." The Court does not have the document to determine if it is simple or complex, but the question does not appear to be complex. Lastly, the qualifying answers do not respond to the inquiry being made. They seem to go beyond the requested admission. *T. Rowe Price,* 174 F.R.D. at 46–7. The Defendants are directed to respond accordingly, however, with regard to

Request No. 100, the word "whatsoever" is stricken.

*Request Nos. 108–110, 119–121.* Quite frankly, this Court finds both the requests and the answers troubling. Rather than being simple and direct, both are extremely esoteric. There lies a hidden agenda in both the requests and the responses, which should not be permitted. Not even the benefit of multiple readings of both help and this should not be countenance. Assuming that this is a long document, stating in the request that the document "failed to disclose," would be disconcerting to anyone trying to answer it. Obviously, an interpretation of documents in this manner is fraught with peril. Under these circumstances, the Court will strike the requests rather than deem the response as denied, unless the Plaintiffs can rephrase the question and refer directly to a pertinent part of the documents for their request.

*Request Nos. 133–138.* The Court finds the requests reasonable. Within the responses, the Defendants advise that they are unable to admit or deny because they do not have the requisite information, or the information is insufficient, notwithstanding their efforts to gain the information readily available to them. They further provide in considerable detail what efforts and inquiries they made, which is acceptable to the Court. All of this is reasonable and proper, if they had only stopped there. The remainder of the answers are an abomination and insulting in their effort to make a complicated matter worse. These unintelligible answers are nonresponsive, evasive, convoluted, and an effrontery to the dictates of Rule 36. A trial judge would be driven to distraction attempting to parse the viability and value of such responses. This Court wonders if the Defendants intended to waste everyone's time trying to decipher what is meant by the responses. Clever, obtuse responses like these are abusive and could very well lead to sanctions or costs under Rules 36(b) and 37(c).[5]

---

5. The Plaintiffs have identified a number of the responses as being inadequate, approximately a third of the 148 Requests to Admit. This Court took the time to read the entire 97 page Supplemental and Amended Responses to the Requests for Admissions. This Court spent countless hours, too many hours in fact, trying to discern

the content of these responses, and would not want this burden visited upon the trial court, no matter how complicated the litigation may be. Even though the requests were more intelligible, the Court senses a trap is laid for the unwary in many of them. The synergy of this litigation, as indicated by these pleadings, borders more on

Defendants are directed to amend their responses accordingly.

*Request Nos. 1, 38, 54, 68.* If the Plaintiffs had not qualified their request by anointing the documents to be admitted as "a true, correct and complete copy," they probably would not have received the unclear responses that they did. The Plaintiffs are directed to rephrase the question accordingly and the Defendants are directed to respond simply and directly.

A fundamental flaw in the manner in which the Defendants responded to the requests was to employ compound sentences that were in fact "run-on" sentences, replete with conditions precedent and subsequent and digressions. Though not specifically addressed in other precedents, this Court strongly suggests that the use of simple sentences would truly advance simple and direct responses and meet the intended purpose of Rule 36.

### Attorney–Client Privilege

In February 2002, the Plaintiffs made a demand for documents. It appears that approximately 10,000 documents were shared, however, approximately 210 documents were not because the Defendants claimed they were confidential pursuant to the attorney-client privilege and/or the work product doctrine. For the several months thereafter, the parties exchanged correspondence on the applicability of both of these privileges with no resolution, and now the Plaintiffs move to compel disclosure of these documents.

Although there was correspondence regarding a privilege log, the actual log was not provided to the Plaintiffs until October 23, 2002, and to this Court on November 13, 2002. The log provides scant details on the documents, but it seems, from the description provided, that the bulk of the documents listed pertain to IRS tax audits of CommutAir.[6]

A significant aspect of the Plaintiffs' charge of overpayment in the ESOP's purchase of CommutAir's preferred stock is the impact of Defendants' failure to disclose two tax audits of CommutAir. They charge that purchase of the preferred stock in March 1994 was done without notice of liability to the IRS for tax return adjustments in previous years and other related transactions, which caused the preferred stock to be overvalued and ESOP to be overcharged. The second audit focused on the creation of, and stock purchase by, ESOP to which the IRS purportedly made findings and assessments that revalued the preferred stock and concluded that there was an overcharge. Docket No. 1, ¶¶ 43–51, 54–56. The Defendants essentially deny that these audits had any impact on the valuation of the preferred stock in 1994. *See* Answers, Docket Nos. 10 and 11.

Plaintiffs assert that they should be permitted to pierce this attorney-client privilege because of the "fiduciary exception." Since this is an ERISA breach of fiduciary duty action brought by ESOP participants on behalf of the Plan, they contend that the exception exists. Furthermore, the Plaintiffs contend that the "fiduciary exception" exists here where shareholders of the corporate defendant pursue an action alleging that the corporation's actions that were taken were adverse to the stockholders' interest. On the other hand, the Defendants contend that the "fiduciary exception" is not warranted in this matter and, if it is, the Plaintiffs have not met all of the factors to invoke the exception under *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970).

---

brinksmanship and sharp practice than anything else. Surely, judicial and litigation economy and efficiency, the intended and vital purpose of Requests to Admit, were not promoted by these parties. A word to the wise to the parties: if this type of conduct persists, sanctions will assuredly be pursued *sua sponte. Thalheim v. Eberheim,* 124 F.R.D. 34, 35–6 (D.Conn.1988) ("[A] reviewing court should not permit a[ ] party to undermine the efficacy of the rule by crediting disingenuous, hair-splitting distinctions whose unarticulated goal is unfairly to burden ...").

**6.** The 16 page log identifies approximately 150 items as confidential as attorney-client privilege and/or work product. The log has columns that identify the document by bate number, date, author, recipient, and a general description of the subject matter. On October 23, 2002, of the 210 documents initially claimed to be confidential, the Defendants re-designated 54 as non-privileged and further advised the Plaintiffs that two more documents were deemed non-privileged.

■ The attorney-client privilege is a longstanding common law privilege recognized in New York and by the federal courts under Fed.R.Evid. 501. This privilege attaches to communications (1) where the legal advice of any kind is sought (2) from a professional legal advisor in his or her capacity as such, (3) the communication relating to that purpose, (4) made in confidence (5) by the client, (6) are at his or her insistence permanently protected, (7) from disclosure by the client or by the legal advisor, (8) except if the protection is waived. *United States v. International Bhd. of Teamsters,* 119 F.3d. 210, 214 (2d Cir.1997); *see also* 8 Wigmore, Evidence § 2292. This privilege further attaches to the advice rendered by the attorney. *In re Six Grand Jury Witnesses,* 979 F.2d 939, 943–44 (2d Cir.1992). Its essential purpose is to encourage clients to be fully forthcoming with their attorney and to provide protection of the clients' legal rights. *Asian Vegetable Research & Dev. Ctr. v. Institute of Inter'l Educ.,* No. 94 Civ. 6551, 1996 WL 14448 (S.D.N.Y. Jan.16, 1996). "However, since the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); *see also In re Horowitz,* 482 F.2d 72, 81 (2d Cir.1973) (privilege ought to be strictly confined within the narrowest possible limits consistent with logic of its principle) (quoting 8 Wigmore § 2291 at 554); *United States v. International Bhd. of Teamsters,* 119 F.3d at 214.

### 1. Garner Rule

When there is a derivative action,[7] the courts have permitted the piercing of the corporation's attorney-client privilege at the behest of the corporation's shareholders. In fact, this ability to pierce the privilege, under this theory, evolves around the fiduciary relationship in addition to being a derivative action. *Garner v. Wolfinbarger,* 430 F.2d 1093 (5th Cir.1970), and its progeny established a doctrine which would permit someone who is owed a fiduciary duty to lift the shield placed upon particular attorney-client communications. The Fifth Circuit in *Garner* held that a corporation's right to assert the attorney-client privilege against its shareholders is not sacrosanct, especially "where the corporation is in suit against its stockholders on charges of acting inimically to stockholders." In such instances, the privilege may be "subject to the rights of the stockholders to show cause why it should not be invoked in the particular instance." *Id.* at 1103–04. Since management and the shareholders have a "mutuality of interest" in management seeking advice, though the real beneficiaries of management actions are the stockholders, management judgment must stand on its merit and "not behind an ironclad veil of secrecy." *Asian Vegetable,* 1996 WL 14448, at *4; *Garner,* 430 F.2d at 1101 (a corporation "is an entity which in the performance of its functions acts wholly or partly in the interest of others"). Realizing that there may be competing interests between the corporation's need for confidentiality and the full disclosure demanded by the shareholders, the *Garner* court struck a balancing test by requiring a showing of good cause for disclosure. *Garner,* 430 F.2d at 1103–04.

■ In determining good cause to pierce the privilege, there are several factors to be considered:

(1) the number of shareholders involved and the percentage of stock they represent;

(2) the bona fides of the claimant shareholders;

(3) the nature of their claim;

(4) the necessity of obtaining the information and its availability from other sources;

(5) whether the alleged misconduct of the corporation was criminal, illegal but not criminal, or of doubtful legality;

(6) whether the communication related to past or to prospective actions;

(7) whether the communication was of advice concerning the litigation itself;

(8) whether the shareholders are "blindly fishing"; and

---

7. The Plaintiffs' third cause of action is a shareholders' derivative action pursuant to N.Y. Bus. Corp. Law § 626. Docket No. 1, ¶¶ 12, 19–23, 103–109.

(9) the risk of revealing trade secrets or other confidential information.

None one of these factors are determinative. *Id.* at 1104.

The Fifth Circuit expanded the *Garner* rule to ERISA claims. *In re Occidental Petroleum Corporation,* 217 F.3d 293 (5th Cir.2000). The facts in *Occidental Petroleum* are eerily similar to the facts in this case. Plaintiffs therein were employees of MidCon Corporation. Occidental established a ESOP for MidCon employees and funded the plan with 1.4 million shares of Occidental preferred stock. As here, U.S. Trust Company of California was the ESOP trustee. Plaintiff shareholders sued Occidental and others under ERISA alleging various breaches of fiduciary duty relating to their ESOP. The district court ordered disclosure of documents triggered by Occidental's fiduciary duty to the plaintiffs as plan administrator. This fell within the "fiduciary-duty exception" to the attorney-client privilege. *Id.* at 297. But the Fifth Circuit did not conclude with that analysis. The Court wrote, "[i]rrespective of whether it owes a fiduciary duty as plan administrator, Occidental fails to show how the court would have erred had it ordered discovery on the grounds that the ESOP, as Occidental, was entitled to pierce the corporation's attorney-client privilege under *Garner,* 430 F.2d at 1103–04." *Id.* Since the ESOP was a shareholder of Occidental, the plaintiffs who are suing as plan beneficiaries on behalf of the plan, the *Garner* rule was applicable and, in the final analysis, the rule was applied. *Id.* at 297–98.

While the Second Circuit has not expressly adopted *Garner,* other circuits and district courts within this circuit have followed the *Garner* doctrine. *In re Dow Corning Corp.,* 261 F.3d 280 (2d Cir.2001) (though *Garner* doctrine is mentioned, it is yet unclear if the circuit court is recognizing it); *Chun Hua Mui v. Union of Needletrades, Indus & Textile Employees,* 1998 WL 915901, at *2–*3, 1998 U.S. Dist. LEXIS 20346, at *7–*9 (S.D.N.Y. Dec. 30 1998); *In Re Kidder Pea-*

*body,* 168 F.R.D. 459, 475 (S.D.N.Y. May 1996); *Asian Vegetable,* 1996 WL 14448 at *4–6; *Martin v. Valley Nat. Bank of Arizona,* 140 F.R.D. 291, 323–326 (S.D.N.Y.1991) (survey of cases); *Quintel Corp. v. Citibank, N.A.,* 567 F.Supp. 1357, 1360–64 (S.D.N.Y. 1983) (survey of cases); *Burghart v. Landau,* 1985 WL 209, at *6 (S.D.N.Y. Jan.23, 1985). Yet, the *Garner* doctrine is not without it detractors.[8]

In order for the *Garner* doctrine to be applicable to a set of facts, there have to be elements of a fiduciary relationship which obligates the fiduciary to safeguard his or her beneficiaries' interest without obscuring his or her reason from the legitimate inquiries of the beneficiaries. *Valente v. Pepsico,* 68 F.R.D. 361 (D.Del.1975); *Asian Vegetable,* 1996 WL 14448, at *5. Without this special relationship, the fiduciary exception has no application. *Asian Vegetable,* 1996 WL 14448, at *6; *Quintel Corp. v. Citibank,* 567 F.Supp. at 1361; *Burghart v. Landau,* 1985 WL 209, at *5. Because of the element of fiduciary responsibility, some courts, while expanding the reach of the beneficiary's ability to pierce the privilege beyond shareholders' derivative actions, attributed the "fiduciary exception" to *Garner.* This fiduciary relationship is not limited to the corporate sphere; rather, it includes fiduciary relationships such as between unions and members, lawyers and other lawyers, banks and clients, general partners in a partnership and general partners and limited partners. N.Y. Partnership Law § 43; *NCAS Realty Mgmt. Corp. v. National Corp. for Hous. P'ships,* 143 F.3d 38, 39 (2d Cir.1998) ("A partner, as a fiduciary, is held to higher standards than those of the marketplace. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior." (citation omitted)); *Asian Vegetable,* 1996 WL 14448, at *6 ("the *Garner* approach is not premised on concepts peculiar to corporate law, but rather has its underpinning in the common law of trust relationship" (quoting *Donovan v. Fitzsimmons,* 90 F.R.D. 583 (N.D.Ill.1981)) (union ERISA pension fund));

---

8. Some academicians and judges have criticized the rule as unnecessary and cumbersome. Stephen A. Salzburg, *Corporate Attorney–Client Privilege in Shareholder Litigation and Similar Cases:*

*Garner Revisited,* 12 Hofstra L.Rev. 817 (1984); *Shirvani v. Capital Investing Corp.,* 112 F.R.D. 389, 390 (D.Conn.1986).

*In re Sunrise Sec. Litig.,* 130 F.R.D. 560 (E.D.Pa.1989) (law firm with conflicting duties to itself and client); *Quintel v. Citibank,* 567 F.Supp. 1357 (bank acting as fiduciary on a land deal). Indeed, the Fifth Circuit that spawned the *Garner* rule recognizes that there exists a fiduciary exception, particularly in ERISA cases, independent from *Garner* analysis. *In re Occidental,* 217 F.3d at 296–7 (citing to *In re Long Island Lighting Co.,* 129 F.3d 268, 271 (2d Cir. 1997)).

### 2. ERISA fiduciary duty

■ The Second Circuit ruled without mentioning the *Garner* doctrine that:

"Under ERISA, an employer may perform both fiduciary functions and non-fiduciary functions.... An ERISA fiduciary has an obligation to provide full and accurate information to the plan beneficiaries regarding the administration of the plan. As part of this obligation, the ERISA fiduciary must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan. An ERISA fiduciary cannot use the attorney-client privilege to narrow the fiduciary obligation of disclosure owed to the plan beneficiaries. Thus, an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matters of plan administration. This principle is the 'fiduciary exception' to the attorney-client privilege."

*In re Long Island Lighting Co.,* 129 F.3d at 271–72; *see also Abbruscato v. Empire Blue Cross & Blue Shield,* 274 F.3d 90, 103 (2d Cir.2001); *Devlin v. Empire Blue Cross & Blue Shield,* 274 F.3d 76, 89 (2d Cir.2001). However, the employer only acts as a fiduciary in plan management or administration, not in the plan's design or amendment; therefore, the rule in the Second Circuit, as in other circuits, is that the "fiduciary exception" to the attorney-client privilege is not applicable to non-fiduciary matters. *Id.* at 271 & 274; *Hudson v. General Dynamics,* 73 F.Supp.2d 201, 202–03 (D.Conn.1999). Notably absent from this ERISA fiduciary exception is the requirement that the beneficiaries have to show good cause as in the *Garner* analysis.

■ The Plaintiffs in this case have a derivative cause of action against all the Defendants except U.S. Trust. They also have an ERISA cause of action against all of the Defendants. As to the first cause of action (derivative), this Court will apply the *Garner* doctrine, and as to the second cause of action (ERISA), this Court will apply the Second Circuit's "fiduciary exception" rule.

As stated above, essential for either rule, is that there must be a fiduciary relationship. Without a doubt, fiduciary relationships are prevalent throughout this matter. With regard to the ESOP, U.S. Trust is the trustee and Defendants Elbe, Sullivan, Drolitte, Price and Owens are members of the administrative committee and Defendant CommutAir is the plan sponsor and administrator, all owing a fiduciary duty to the Plaintiffs. Docket No. 1, ¶¶ 1–8; Answers, Docket No. 10, ¶¶ 2–10; Docket No. 11, ¶¶ 1–8. As to the derivative action, Defendants Elbe, Sullivan, and Drolitte are majority shareholders, officers, and directors of CommutAir; Price is the president of CommutAir; and Owens is the secretary and director of CommutAir, again, all owe fiduciary obligations to the Plaintiffs. Docket No. 10, ¶¶ 4–6. It should be remembered that CommutAir is a closely held corporation, and at one time was deemed a Subchapter S corporation for income tax purposes. Subchapter S Corporation is a hybrid of limited corporate liability and the tax benefit of partnerships; the intent being to take advantage of the best of both worlds. CommutAir no longer qualifies as an S corporation, primarily because it sold 540,000 shares of preferred stock to the ESOP, and elected before that event to be a C Corporation, which still does not disturb for this Court the "closely held" status. Docket No. 1, ¶ 36. Under this scheme, there is little distinction between these shareholders and members of a partnership, where a more heightened fiduciary duty exists. *NCAS Realty Mgmt. Corp. v. National Corp. for Hous P'ships,* 143 F.3d at 39 ("A partner, as a fiduciary, is held to higher standards than those of the marketplace.

Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.").

As previously stated, the fiduciary exception is not permitted in non-fiduciary matters. However, case law provides little guidance as to how to distinguish between fiduciary and non-fiduciary activities. The discussions therein tend to blur the demarcation between the two even more. A more reliable yardstick, when considering this exception to the attorney-client privilege, would be to look at the purpose for which the legal advice is sought. *Hudson v. General Dynamics*, 73 F.Supp.2d at 202–03.

The Defendants' privilege log, in general, indicates communications between Owens, an attorney who also wears several other corporate hats such as a member of the administrative committee of the ESOP and officer of CommutAir, and the shareholder Defendants on the general subject matter of CommutAir's tax audits. There are several other attorneys listed (Goldberg, Ryan, Thornton), but the log provides little as to their role and whom they represent. As mentioned earlier, the Plaintiffs attempt to link these tax audits into their ERISA breach of fiduciary duty action. The ESOP was funded by $60,000,000 of CommutAir preferred stock, a decision, which is safe to presume, was determined by the Defendants. Prior to the establishment of the ESOP, the Shareholder Defendants were given promissory notes in the aggregate of $15,068,886, which were supposed to be subordinate to the rights of the ESOP, and yet they may have already been paid in full when they should not have been. The Complaint implies that these payments were premature. The Plaintiffs further charge that the valuations by Valuemetrics of CommutAir and the preferred stock were inflated, failing to take into consideration, at the time of the valuation, those things ultimately revealed by two tax audits of CommutAir. Furthermore, the second tax audit may have rendered findings indicating that the ESOP may have been overcharged. Docket No. 1, ¶¶ 43–51. The valuation of the plan's corpus and CommutAir, how the ESOP will pay for the assets and the administration of those assets are fiduciary duties.

Moreover, Owens, who is a fiduciary due to his membership in the administrative committee among other things, purportedly provided legal advice only to an elite set of shareholders (Elbe, Sullivan, Drollette) when, in fact, he is in a more highly sensitive position to disclose his advice to all because it affects the rights or obligations of all members including the ESOP and not just a select few. The Court finds these documents related to the tax audits to be highly relevant to the administration of the ESOP and must be disclosed under this "fiduciary exception."

If the Court employs the *Garner* doctrine in considering whether to pierce the attorney-client privilege, the Defendants argue that the Plaintiffs have failed to show good cause by not being able to meet the nine factors delineated in *Garner*. First, none of the factors are more determinative of the other except the requisite of a fiduciary relationship, which this Court has already concluded exists in this matter. In addition, there may be other indicia to weigh and not just these nine factors in determining whether the Plaintiffs have met their burden to have the privilege shed. But, this Court will consider the factors seriatim.

At this juncture, there are only two shareholders named as Plaintiffs out of a possible 825 participants in the ESOP. The Court does not know if this matter will be converted into a class action, and, at this moment, it does not matter. Contesting the Defendants' assertion that they represent an infinitesimal number of shareholders, the Plaintiffs have provided a signed list of approximately 45 more shareholders who joined in this application. This enhanced number and the fact that they are acting on behalf of the ESOP, which owns 30% of CommutAir, suffice. Continuing with the factors, this Court finds that this information is obviously necessary to this claim and cannot be obtained from any other source. The Plaintiffs attempted to gain this information directly from the IRS, but to no avail. The IRS denied a FOIA request stating that the information was protected by the Internal Revenue Code. Docket No. 1, ¶¶ 63–5. It seems that the communications in question relate to both past and prospective actions and not advice concerning

this litigation. It cannot be said that the Plaintiffs are "blindly fishing" for documents because the tax audits seem to be a critical component of their lawsuit and have been mentioned by them at every turn. Lastly, there is no risk of revealing trade secrets or other confidential information. If there is, the Defendants have failed to bring this to the Court's attention. Under the Court's analysis the Plaintiffs have prevailed under *Garner* to pierce the attorney-client privilege.[9]

Even if the *Garner* doctrine is used to determine disclosure of these confidential documents, the Defendants argue that this doctrine cannot pierce material protected under the work product doctrine. All of the documents listed in their privilege log are claimed to be work product. *Chun Hua Mui v. Union of Needletrades,* 1998 WL 915901, at *3–*4, 1998 U.S. Dist. LEXIS 20346, at *10–*12 (S.D.N.Y. Dec. 30, 1998) ( refusing to overcome work product doctrine where plaintiffs merely offered reasons used in trying to overcome attorney-client privilege). The Court senses that the Defendants may have painted these documents as "work product" with a very broad brush.

The work product privilege is more broad that the attorney-client privilege. *In re Grand Jury Proceedings,* 219 F.3d 175, 190 (2d Cir.2000). The privilege exists to protect attorneys' mental impressions, opinions or legal theories concerning litigation. *Horn & Hardart Co. v. Pillsbury Co.,* 888 F.2d 8, 12 (2d Cir.1989). After the Supreme Court rendered its seminal case on the work

product doctrine, *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the Federal Rules of Civil Procedure were amended. Fed.R.Civ.P. 26(b)(3), in relevant parts, provides that:

> A party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party ... only upon a showing that the party seeking discovery has a substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

First, the work product doctrine does not extend to facts, in most instances. Generally, facts should be freely discoverable. *Compare In re Savitt/Adler Litig.,* 176 F.R.D. 44, 48 (N.D.N.Y.1997) *with In re Grand Jury Subpoena Dated Oct. 22, 2001,* 282 F.3d 156, 161 (2d Cir.2002) (discussed below). The purpose of this doctrine is to protect an attorney's mental processes, strategies and legal impressions. The doctrine is to establish a "zone of privacy" in which a lawyer can prepare and develop theories and strategies with an eye towards litigation free from unnecessary intrusion by his or her adversaries. *United States v. Adlman,* 68 F.3d 1495, 1501 (2d Cir.1995) (citing *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947)); *see also Matter of Minebea Co. Ltd.,* 143 F.R.D. 494, 499 (S.D.N.Y.1992). The concern of revealing the attorney's processes must be

---

9. This may be moot, at least as to the attorney-client privilege, but the Plaintiffs also seek these confidential documents under the crime or fraud exception to the attorney-client privilege. Indeed the Plaintiffs allege fraud against all of the Defendants. The courts have recognized such an exception to the attorney-client privilege for communications between lawyer and client that are designed to facilitate or even conceal the commission of a crime or fraud. *In re Richard Roe,* 68 F.3d 38, 39–40 (2d Cir.1995) (the issue is whether the communications were made to further that crime or fraud.); *In re John Doe, Inc.,* 13 F.3d 633, 636 (2d Cir.1994); *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1041 (2d Cir.1984); *In re John Doe Corp.,* 675 F.2d 482, 491 (2d Cir.1982); *United States v. Bob,* 106 F.2d 37, 40 (2d Cir.1939). To assert this exception, the discovering party must demonstrate reason-

able cause to believe that a crime or fraud has been committed or was intended and that the attorney-client communication was intended to facilitate or conceal the misconduct. *United States v. Jacobs,* 117 F.3d 82, 87 (2d Cir.1997). In assessing whether the Plaintiffs have demonstrated probable cause, the Court must review the privileged documents and ascertain if they support the view that they are being used to commit or conceal a fraud or a crime. *United States v. Zolin,* 491 U.S. 554, 572, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989); *Boss Mfg. Co. v. Hugo Boss AG,* No. 97 CIV. 8495, 1999 WL 47324 (S.D.N.Y. Feb.1, 1999). Documents were not presented to the Court for review, so it is not in a position, at this juncture, to grant this application. Moreover, the descriptions of the subject matters of the documents set forth in the privilege log do not suggest any crime or fraud.

real and not speculative. *Gould Inc. v. Mitsui Mining & Smelting Co.,* 825 F.2d 676, 680 (2d Cir.1987).

The facts in *United States v. Adlman,* 68 F.3d at 1501, are instructive. In that case, a merger was contemplated which would have generated significant tax loss and invariably a large tax refund. Because of this development, it was presumed that the IRS would challenge such an event, which in fact occurred. Prior to the litigation, the defendant asked Arthur Anderson, an accounting firm, to evaluate the tax implication of this merger to which they prepared a 48–page memorandum. The IRS sought this memorandum by a summons and then by litigation. The defendant charged that this memorandum was shielded by the work product doctrine, though it may have had mixed motives for its production. *Id.*

The Second Circuit, after a thorough survey of all of the federal courts that attempted to determine what is meant by the phrase "in anticipation of litigation," put to rest whether "primarily assist" or "because of" formulation was the appropriate and determinative standard. In the final analysis, the Circuit opted for the "because of" formulation, that is, if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained *because of* the prospect of litigation," then it was prepared in "anticipation of ligation." *Id.* at 1502. Moreover, "where a party faces the choice of whether to engage in a particular course of conduct virtually certain to result in litigation and prepares documents analyzing whether to engage in the conduct based on its assessment of the likely result of the anticipated litigation, [it should be] conclude[d] that the preparatory documents should receive protection under Rule 26(b)(3)." *Id.* at 1496. The crux of this being that a document that has been prepared because of the prospect of litigation, even though it may assist in business decisions, will not lose it protection under the work product doctrine. *Id.* at 1502; *Strougo v. BEA Assoc.,* 199 F.R.D. 515, 521 (S.D.N.Y.2001). But this protection will not be extended, under any circumstances, to records that are prepared in the ordinary course of business. *Id.*

There is another disagreement among the courts on whether the *Garner* doctrine would be applicable to work product privilege as it is to the attorney-client privilege. Because the underlying premise for the work product doctrine is to protect the attorney's mental impressions and opinion, for some courts it is somewhat inapposite to the *Garner* doctrine, which is primarily supported by the principle of fiduciary and trust. Other courts and academicians have found the distinction illogical. Edna Selan Epstein, *The Attorney–Client Privilege and Work–Product Doctrine,* (4th Edition 2001) pps. 602–605 (it is more logically consistent to make the *Garner* Doctrine equally applicable to the two privileges). This Court accepts the point of view expressed in *Strougo v. BEA Associates,* that *Garner* is not applicable when the work product doctrine is claimed and does not permit disclosing those communications regarding "the defense of a lawsuit." *Id.* at 524; *Chun Hua Mui v. Union of Needletrades,* 1998 WL 915901, at *3, 1998 U.S. Dist. LEXIS 20346, at *11.

However, with all of the above being said and knowing what doctrines apply, this Court cannot progress in determining if the documents listed on the privilege log will remain undisclosed for several reasons. On the face of the log, it appears that these documents are related to the relevant tax audits, which were the subject of subsequent litigation. Docket No. 1, ¶ 51. In fact it is safe to assume, where governmental agencies, much like the IRS, attempt to investigate and then enforce their findings, litigation is expected. Although this Court tried to determine what may be protected or subject to disclosure under the work product doctrine by employing the Defendants' privilege log, to continue would place the Court upon a slippery slope since it would have to make a number of unwarranted assumptions. The Court is stymied in such discernment because of the paucity of information provided by the log or the Defendants' letter-memoranda in support of the two privileges. A proponent of a privilege log must "make the claim expressly and shall describe the nature of the docu-

ments, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." Fed.R.Civ.P. 26(b)(5); *Strougo v. BEA Assoc.,* 199 F.R.D. at 519. There must be facts provided that would establish each element of the claimed privilege as to each disputed document. *Id.* Here, the descriptions are too meager to help a party, let alone the Court, assess the privilege's applicability and under the current situation, this effort has become more of an ordeal than productive.

What confounds this issue more is the role of William Owens, and it must be stated that this confusion is caused by the Defendants. Nearly every purportedly protected document on the log is authored by Owens. He is listed predominately throughout the log as an attorney ("Esq." is listed after his name) whose opinions and mental impressions that are being requested not to be revealed but were shared most often with the Shareholder Defendants. In the Complaint, the Plaintiffs state that Owens is CommutAir's chief counsel, to which the Defendants deny, yet they admit that he is the secretary and director of CommutAir. Docket No. 1, ¶ 6; Docket No. 10, ¶ 6. Additionally, he was a member of the administrative committee that helped guide the ESOP.

The question of what capacity an in-house counsel may be acting is not academic and difficult to resolve. In fact, the myriad of roles assumed by Owens invites questions. What was Owens' role in these tax audits? Was he acting as an attorney in each instance? When was he an attorney or the secretary of the board or committee member? Were some of these documents prepared because of business reasons without the expectation of litigation? Were they prepared because of expected litigation and, if so, what litigation? Are these documents being cloaked as work product only because they were issued by Owens? This Court comes to a dead halt in resolving these questions and more based upon the lack of information provided in the log. Such difficulty in

determining the capacity of Owens, and maybe others, and the related nature of the creation of these documents, may call for a more extensive examination. *See, e.g., Hardy v. New York News, Inc.,* 114 F.R.D. 633 (S.D.N.Y.1987).

Without striking the privilege because, apparently, the Defendants may not have made a clear showing, the Court is going to require the Defendants to submit, *in camera,* an affidavit providing the following: (1) the identity of each person listed as author and their role in preparing the documents; (2) the identity of each recipient, the role in which they received the documents and whether they are a party or non-party to the previous litigation; (3) a more elaborate explanation of how the specific document, or specific portion of the document, is protected by the work product doctrine; and, (4) the circumstances under which the document was prepared. Further, the Defendants are required to provide a more descriptive log, which will be served upon the Plaintiffs. Lastly, all of the documents claimed to be insulated from disclosure pursuant to the work product doctrine are to be provided to this Court for an *in camera* inspection, and the Defendants must identify on the documents what portion of the document is deemed protected and why.[10]

In a similar respect, the Plaintiffs have not established, to the satisfaction required, that they have substantial need of the materials in the preparation of their case and they are unable to obtain the substantial equivalent by other means. Fed.R.Civ.P. 26(b)(3). Therefore, the Plaintiffs will be permitted to submit another letter-memorandum in an attempt to satisfy this requirement. In addition, the Plaintiffs may provide any other objections they may have relative to a specific document and the asserted work product privilege, since they failed to fully address this issue in their memoranda. Lastly, the Plaintiffs will be permitted, after receiving the revised privilege log, to provide the Court with any other observations that they may have regarding a particular document to guide this Court through its review, includ-

---

**10.** The Plaintiffs had asked the Defendants to provide these documents to the Court for an *in* camera inspection, which, obviously, was rejected by the Defendants.

ing but not limited to, the applicability of the crime fraud exception to the work product doctrine and further amplification of their contentions.[11]

### Attorney–Client Privilege at Deposition

There is another dispute within this case regarding disclosure that turns on another permutation of the attorney-client privilege and work product doctrine.[12] During and throughout the depositions of both Plaintiffs, Henry and Malinsky, their counsel directed them not to answer certain questions, and there were many, because of the attorney-client privilege. Plaintiffs, though not previously indicated in the deposition transcript, now add the work product doctrine to the discussion. Overall, it generally appears that the Defendants were asking questions directed at the assertions set forth in the complaint. Though enunciated in different form, prose and tone, the gist of the objections and the direction from counsel were: " I instruct you not to testify as to any information learned from me; but, you can answer the question as to your knowledge other than through counsel"; or, " to the extent that it calls for you to reveal any attorney/client communications you're instructed not to answer."

The Defendants contend that Plaintiffs' counsel improperly impeded their justified right to inquire into the factual basis of the complaint by interposing objections based upon the attorney-client privilege. They further argue that the attorney-client privilege does not shield facts, even if they are provided to the deponent by his attorneys. Plaintiffs, contrariwise, frame the dispute differently. Plaintiffs charge that the Defendants' questions were cleverly crafted in an attempt to peer into the attorney's work product. In essence, the Defendants' questioning of the Plaintiffs is "tantamount to asking Plaintiffs' counsel 'what facts have you discovered in your investigation.' " Moreover, they argue that even facts can be work product and therefore need not be disclosed. The Court does not share the Plaintiffs' view that the Defendants were clever in posing the questions at the depositions in order to invade the work product doctrine. Rather, this Court finds the Plaintiffs more adept at creating the appearance of a duplicity than what actual occurred on May 1, 2002.

▮▮▮ There are yet set boundaries with regard to disclosure when both of these privileges are invoked. Therefore, when applied, they must be done in a "common sense way in light of reason and experience as determined on a case by case basis." *In re Six Grand Jury Witnesses,* 979 F.2d at 944 (citations omitted). With respect to the attorney-client privilege, it can shield only those communications made in "confidence to a lawyer to obtain legal counsel that would not have been made without the existence of the privilege." *Id.* at 944 (citations omitted); *Standard Chartered Bank PLC v. Ayala Int'l Holdings U.S. Inc.,* 111 F.R.D. 76, 79 (S.D.N.Y.1986) (attorney's communication is confidential if it contains legal advice or reveals confidential information on which the client seeks advice). Those communications include the information provided by the client and the legal advice given, yet, the cloak of this privilege does not shield "the underlying information [or substance] contained in the communication . . . ." *Id.* at 944, 945; *Ray Larsen Assoc. v. Nikko America, Inc.,* 1993 WL 307905 (S.D.N.Y. Aug.11, 1993); *Gonzalez v. McGue,* 2000 WL 1092994, *1 (S.D.N.Y. Aug. 3, 2000) (the advice must reflect the client's confidential communication). As true with the work

**11.** Currently, there are allegations in the complaint of fraud but without more, this is not an adequate showing. The Plaintiffs have provided copies of Defendant Price's depositions. Though the transcripts indicate some misgivings about inaccuracies and omissions, they, alone, are not sufficient to support a charge of a crime or fraud. Plaintiffs' November 22, 2002 letter-memorandum with exhibits.

**12.** This discovery dispute is raised by the Defendants in their letter-memorandum dated November 20, 2002. Attached thereto as exhibits are the Defendants' correspondence to Plaintiffs dated October 1, 2002, and the rejoinder from Plaintiffs by correspondence dated October 11, 2002. These two exhibits are the sources of the respective parties' position on this issue. In addition, the Court is provided selected, representative portions of Plaintiff John Henry's May 1, 2002 deposition to note the questions and corresponding responses in conflict and to frame the legal objection.

product doctrine, unwarranted and intrusive questions probing the attorneys' files and theories of the case, even by means of a deposition, are barred, unless there is a showing of substantial need required by Fed. R.Civ.P. 26(b)(3). *See In re Six Grand Jury Witnesses,* 979 F.2d at 944 (relevant, non-privileged facts may be discovered from attorney's files where production is essential). And still, the factual information is not protected just because it was developed in anticipation of the litigation (*id.* at 945) because discovery of the underlying facts of a communication depends on its nature, rather than its source. *Bank Brussels Lambert v. Credit Lyonnais,* 1995 WL 598971, at *11 (S.D.N.Y. Oct.15, 1995) (party directed to answer as to facts that she knows, no matter the source). That is, the privileges do not protect the client's knowledge of the relevant facts, whether they were learned from counsel or facts learned from an attorney from independent sources. *Tribune Co. v. Purcigliotti,* 1997 WL 10924, * 4 (S.D.N.Y. Jan.10, 1997); *Standard Chartered v. Ayala,* 111 F.R.D. at 80 (the privilege does not protect facts which an attorney obtained from independent sources and conveyed to his client, citing *Allen v. West Point–Pepperell Inc.,* 848 F.Supp. 423, 428 (S.D.N.Y.1994)).

There have been times when litigants and even the courts have stated these principles very broadly, when they should be more narrowly construed and dependent upon the circumstances. It is indeed accurate, as the Plaintiffs suggest, that the work product doctrine may encompass facts as well. *In re Grand Jury Subpoena Dated October 22, 2001,* 282 F.3d 156, 161 (2d Cir.2002); *In re Grand Jury Subpoenas dated March 19 & Aug. 2, 2002,* 2002 WL 31040322, *5 (S.D.N.Y. Sept.12, 2002). This Court, nor any other court, would permit any counsel to inquiry of opposing counsel, "What facts have you discovered in your investigation" or make a request that has the goal of learning what opposing counsel is thinking or his or her strategies. *In re Grand Jury Subpoena Dated October 22, 2001,* 282 F.3d at 161; *In re Grand Jury Subpoenas dated March 19 & Aug. 2, 2002,* 2002 WL 31040322, at *5. But this is not a carte blanche rule in which any facts ascertained by the efforts of the attorney cannot be revealed. As stated earlier, this is a case by case determination, and the court should proceed cautiously. *In re Grand Jury,* 282 F.3d at 161.

More to the point, Plaintiffs overly and erroneously rely upon *In re Grand Jury,* 282 F.3d 156, for the legal proposition that the underlying fact information gained during the course of litigation is forever sealed. In the first instance, our facts are quite distinguishable from those in *In re Grand Jury.* To put it in a more clearer perspective, that case was a criminal investigation and in the criminal justice system the work product doctrine is "even more vital." *In re Grand Jury,* 2002 WL 31040322, at *2. There the Court was struggling with a request by the government to compel an attorney to testify to observations made in the course of the attorney's representation of a client and essentially testify against the client as to an admission he may have made in his attorney's presence that tended to prove guilt. The Second Circuit would not permit such an injustice in that case, finding that the compulsion of this type of testimony fell within the definition of work product. These facts, however, do not rival the same concern and yet, I will not permit a broad and impermissible inquiry that is "aimed at, [or] cannot help but to uncover, legal strategy that is properly within an attorney's 'zone of privacy.'" *In re Grand Jury,* 2002 WL 31040322, at *5.

The types of inquiries posed at the deposition in this case are remarkably similar to those asked in *Bank Brussels Lambert,* 1995 WL 598971. The legal objections raised then, in words or substance, are the same: "I'm going to instruct you not to reveal communications with counsel;" "Again, let me caution you not to reveal communications that we had;" and, " Excluding from her opinion information that she obtained from counsel." *Id.* at *9. As that court found, there is simply nothing wrong with asking facts from the deponent even if those facts may have been communicated to the deponent by counsel. The non qua sine is all in how it is asked. The phrasing of the question is critical. *Id.* at *12.

Second, it seems to this Court that the collection of facts by Plaintiffs' counsel appear to be neutral and objective, absent critical, analytical input from counsel, and thus not shielded by the work product doctrine. *In re Grand Jury*, 2002 WL 31040322, at *7. The acquisition of this information is subject to disclosure if there is a showing of substantial need. A showing may be made by simply asking how will the Defendants know the factual basis of the Plaintiffs' case without revelation of those facts? All of this can be done without revealing the attorney's mental impressions and opinions. The Plaintiffs can take comfort in that the Court will not allow the Defendants to inquire into the nature of "what did you say or write to your attorney" or to gain the corresponding advice, but will also not permit these privileges to be used as both a sword and a shield.

This Court has reviewed Henry's deposition in agonizing detail. Because the inquiries were posed in different forms and contexts, the Court cannot issue an order that would cover all of the contested inquiries. However, the Court directs generally that the Plaintiffs be produced to answer those questions not previously answered because of the attorney-client privilege being invoked. For specific direction as to each independent inquiry, the parties are directed to Appendix A for further guidance.

Lastly, Defendants move this Court to direct the Plaintiffs to reveal to them what Henry's counsel said to him during the break of his deposition. Defendants rely heavily on *Hall v. Clifton Precision*, 150 F.R.D. 525 (E.D.Pa.1993), which is embraced within that circuit, but seems to be highly criticized elsewhere. Furthermore, it has not been followed by the Second Circuit or by any district court within the circuit. In the scheme of things, the motion is of no moment either. To gain this information may truly intrude upon the attorney-client privilege and the work product doctrine. To have this information is only to gain a tactical advantage of some nature, but hardly seems to be a quest for relevant subject matter germane to the issues at hand. Therefore, this Motion is denied.

## CONCLUSION

For the reasons set forth above, it is the hereby

ORDERED that the Plaintiffs' motion to compel revised responses to the Requests for Admission is GRANTED and both parties are to be guided by this decision and to act accordingly. Any Request to Admit which must be rephrased shall be served on the Defendants within seven (7) days of this order and the Amended (Second) Responses to Requests to Admit must be served upon the Plaintiffs within thirty (30) days of this order; and it is further

ORDERED that the Plaintiffs' motion to compel disclosure of certain documents is DENIED, at this juncture, and, *unless the issue is settled by the parties*, the Defendants are required, as directed by this decision, to serve and file a revised privilege log within fifteen (15) days of this order, file with the Court an affidavit supporting their asserted work product privilege and the documents in question for an *in camera* inspection, within thirty (30) of this order; and the Plaintiffs, after being served with the revised privilege log, may submit to the court a legal memorandum addressing the issues of substantial need and any other observation regarding the specific documents identified on the revised privilege log within twenty (20) days thereafter; and it is further

ORDERED that the Defendants' motion to compel the Plaintiffs to more fully answer questions posed to them at their respective depositions that were not answered due to the invocation of the attorney-client privilege is GRANTED to the extent directed above and by Appendix A. The Plaintiffs will be produced for further deposition at their expense and the convenience of the Defendants; and it is further

ORDERED that the Defendants' motion to compel disclosure of the conversation had between Plaintiff Henry and his attorney during his deposition on May 2, 2002, is DENIED.

SO ORDERED.

## Appendix A
### Deposition of Joseph Henry
### May 1, 2002

| PAGE | QUESTION | OBJECTION | COURT RULING |
|---|---|---|---|
| 11–14 | Asked who drafted or prepared documents for the attorney | attorney client privilege—discloses communication | Not the privilege but will be sustained because asking who drafted document is irrelevant and protected by work product doctrine |
| 40–42 | Was there any other information you have than what was in the article that causes you to question Mr. Ackerman's report | Object to the extent it would require you to disclose attorney/client communication | Overruled. Witness is to disclose the underlying facts no matter the source but not reveal any legal advice. |
| 52–53 | Paragraph 8 of the complaint—What was the basis for this assertion. Where did you get that information | attorney/client communication | Overruled. Must provide the factual basis of the assertion. |
| 70–73 | Questions regarding paragraph 40 of the Complaint and the basis for certain assertions | attorney/client communication | Overruled. Must provide the underlying factual basis but does not have to disclose the legal advice provided. |
| 125–127 | Questions regarding paragraphs 61 and the basis for the assertions | attorney/client communication | Overruled. Must provide the underlying factual basis even if provided by counsel but not the legal advice provided. |
| 143 & 146 | Questions on Paragraphs 78, 79 of the complaint and the basis for the assertion | attorney/client communication | Overruled. Must provide the underlying factual basis even if provided by counsel but not legal advice |
| 157–58 | basis for assertion that none of the costs of renovation wer reimbursed by CommutAir | not to disclose anything regarding our communications | Overruled. Must provide the underlying factual basis even if provided by counsel but not the legal advice provided |
| 160–161 | Do you know how much Champion Air sold the airplane for | only disclose what you know other than through counsel | Overruled. Must provide the underlying factual basis even if provided by counsel but not the legal advice provided |
| 166–173 | Paragraph 95 of the complaint: which of the particular breaches referred to in the complaint is it you assert; the basis for your assertion that U.S. Trust conceal breaches of fiduciary duty (sample of inquiry) | legal conclusion and information provided by counsel | Overruled. Does not have to answer legal conclusions but must answer the underlying facts from all sources but not the legal advice provided |
| 182 | Any basis for concluding that any of the misrepresentations that you assert are contained in this memorandum | received from counsel | Overruled. Does not have to answer legal conclusions but must answer the underlying facts from all sources but not the legal advice provided |
| 189 | What is your understanding of the source of her obligation to do that | source of understanding is lawyer | Sustained. Question is answered |
| 239–245 | Questions regarding the drop in price and the basis for such assertion | Instruct you not to answer anything as relates to our discussions | Overruled. Must provide the underlying factual basis from all source, including lawyer, but do not disclose legal advice provided. |
| 287–292 | At the time you signed the complaint identifying specific defects in the valuation on which the | answer without disclosing any of your discussion with counsel | Overruled. Must provide the underlying factual basis from all sources, including lawyer, |

## AppendixA—CONTINUED

| | | | |
|---|---|---|---|
| | ESOP transaction was based .... | | but do not disclose legal advice provided |
| 295–296 | What is your understanding of "on information and belief" | legal conclusion and attorney/client communication | Sustained. This is asking for a legal conclusion. The current answer will stand. |
| 297–298 | Questions regarding shareholder defendants being paid excessive compensation | excluding conversations with counsel | Overruled. Must disclose the underlying factual information from all sources, including lawyer, but not legal advice. |
| 300–302 | Question regarding your understanding as to the compensation of the shareholder defendants | upon information and belief | Overruled. The questions were somewhat answered but the answers could be clearer by providing the factual information basis from all sources, but not legal advice provided. |
| 313–315 | Questions regarding the arrival of the jets. "You can't make it privilege by telling him information." | if you are discussing communications with counsel and attorney/client communication | Overruled. Must provide factual information basis from all sources, including counsel, but does not have to disclose his communication with his counsel and counsel's advice. |
| 343–344 | Question regarding the DC–3s being stored at the north hangar | You are not to testify as to any communication you had with your counsel. | Overruled. Must provide underlying factual information basis from all sources, including counsel but does not have to disclose his communication or his counsel's legal advice. |
| 378 | Questions regarding who participated in the decision to select the Houlihan Lokey firm to prepare the valuation | I instruct you not to testify as to any information learned from me ... | Overruled. Must provide the underlying factual basis from all sources, including counsel, but does not have to disclose his communication or his counsel's legal advice. |